# Exhibit A

LOCATION:    1921 Yale Boulevard SE
Albuquerque, NM 87106

LOCATION #:  10006

DATE: *March 8, 2019*

**HOLIDAY HOSPITALITY FRANCHISING, LLC**

**HOLIDAY INN EXPRESS® & SUITES HOTEL**

**RELICENSING
LICENSE AGREEMENT
WITH**

**110 SUNPORT, L.L.C.**

**LICENSEE**

**Holiday Hospitality Franchising, LLC**

## LICENSE AGREEMENT TABLE OF CONTENTS

1.  THE LICENSE: ................................................................................................................. 1
   A.  THE HOTEL: ............................................................................................................. 1
   B.  THE SYSTEM: ........................................................................................................... 1
2.  GRANT OF LICENSE: .................................................................................................... 2
3.  LICENSEE'S RESPONSIBILITIES: ............................................................................... 2
   A.  OPERATIONAL AND OTHER REQUIREMENTS: ............................................................. 2
   B.  FEES: ...................................................................................................................... 4
4.  LICENSOR'S RESPONSIBILITIES: .............................................................................. 5
   A.  TRAINING: ............................................................................................................... 5
   B.  RESERVATION SERVICES: ......................................................................................... 5
   C.  CONSULTATION ON OPERATIONS, FACILITIES AND MARKETING: .................................. 5
   D.  MAINTENANCE OF STANDARDS: ................................................................................ 6
   E.  APPLICATION OF STANDARDS: .................................................................................. 6
   F.  OTHER ARRANGEMENTS FOR MARKETING, ETC.: ....................................................... 6
   G.  USE OF SERVICES CONTRIBUTION: ........................................................................... 6
   H.  PERFORMANCE OF LICENSOR'S OBLIGATIONS: .......................................................... 6
5.  APPEALS, CHANGES IN THE STANDARDS: ................................................................ 6
   A.  APPEALS: ................................................................................................................ 6
   B.  CHANGES IN THE STANDARDS: ................................................................................. 7
   C.  DECISIONS ON APPEAL: ........................................................................................... 7
   D.  LIMITATION ON APPEAL RIGHTS: .............................................................................. 7
   E.  MEMBERSHIP: .......................................................................................................... 7
   F.  FUNCTION OF COMMITTEES: ..................................................................................... 7
7.  PROPRIETARY RIGHTS: ............................................................................................... 7
   A.  OWNERSHIP OF SYSTEM: ......................................................................................... 7
   B.  TRADEMARK DISPUTES: ........................................................................................... 8
   C.  PROTECTION AND USE OF NAME AND THE MARKS: ..................................................... 9
   D.  MODIFICATION OR DISCONTINUATION OF THE MARKS: ............................................... 9
   E.  ARCHITECTURAL MODIFICATIONS: ............................................................................ 9
8.  RECORDS AND AUDITS: ............................................................................................... 9
   A.  MONTHLY STATEMENTS AND DATA: ........................................................................... 9
   B.  PREPARATION AND MAINTENANCE OF RECORDS: ....................................................... 9
   C.  AUDIT: .................................................................................................................... 10
   D.  ANNUAL FINANCIAL STATEMENTS: ........................................................................... 10
9.  INDEMNITY AND INSURANCE: ................................................................................... 10
   A.  INDEMNITY: ........................................................................................................... 10
   B.  INSURANCE: ........................................................................................................... 11
   C.  EVIDENCE OF INSURANCE: ...................................................................................... 11
10. TRANSFER: .................................................................................................................. 11
   A.  TRANSFER BY LICENSOR: ....................................................................................... 11
   B.  TRANSFER BY LICENSEE: ........................................................................................ 12
   C.  TRANSFER OF EQUITY INTERESTS THAT ARE NOT PUBLICLY TRADED: ........................ 12
   D.  TRANSFERS OF PUBLICLY-TRADED EQUITY INTERESTS: ........................................... 12

E.    Transfer of the Hotel by Natural Person:...................................................................... 13
F.    Transfers of Equity Interests in the Licensee Upon Death To Family Members: .................. 14
G.    Registration of a Proposed Transfer of Equity Interests:.................................................... 14
H.    Change of Ownership:................................................................................................. 15
I.     Transfer of Real Estate:.............................................................................................. 15
J.    Management and Name of the Hotel: ............................................................................ 16

11.  CONDEMNATION AND CASUALTY:.................................................................. 16

A.    Condemnation:.......................................................................................................... 16
B.    Casualty: ................................................................................................................... 17
C.    No Extensions of Term: .............................................................................................. 17

12.  TERMINATION:................................................................................................. 17

A.    Expiration of Term: .................................................................................................... 17
B.    Termination by Licensor on Advance Notice: ................................................................ 18
C.    Immediate Termination by Licensor: ............................................................................ 18
D.    De-Identification of Hotel Upon Termination: ................................................................ 19
E.    Payment of Liquidated Damages: ................................................................................. 19

13.  RELATIONSHIP OF PARTIES: ........................................................................ 20

A.    No Agency Relationship: ............................................................................................ 20
B.    Licensee's Notices to Public Concerning Independent Status: ......................................... 20

14.  MISCELLANEOUS:........................................................................................... 20

A.    Severability and Interpretation:.................................................................................... 20
B.    Binding Effect, Choice of Law, No Jury Trials, No Punitive Damages and Licensor's Right
to Injunctive Relief:............................................................................................................ 21
C.    Exclusive Benefit: ..................................................................................................... 21
D.    Entire Agreement:...................................................................................................... 22
E.    Licensor Withholding Consent: ................................................................................... 22
F.    Notices:.................................................................................................................... 22
G.    Authority:................................................................................................................. 22
H.    General Release and Covenant Not to Sue: .................................................................. 22
I.     Performance of the Work:........................................................................................... 23
J.    Reimbursement of Expenses: ...................................................................................... 23
K.    Descriptive Headings:................................................................................................ 23
L.    Capital Reserve; Capital Reinvestment and Renovation Cycles: ..................................... 23
M.    Anti-Terrorism, Anti-Bribery and Trade Sanctions Compliance: ..................................... 24
N.    Business Judgment:.................................................................................................... 25

15.  BRAND PROVISIONS:...................................................................................... 25

16.  SPECIAL STIPULATIONS: ............................................................................... 26

ATTACHMENT "A" ................................................................................................. 28

ATTACHMENT "B" ................................................................................................. 29

GUARANTY............................................................................................................. 31

LA 2018

**Holiday Hospitality Franchising, LLC**
**Three Ravinia Drive, Atlanta, Georgia 30346**

**License Agreement**

This License Agreement ("License") dated *March 8*_____, 2019 (the "Term Commencement Date") is between **HOLIDAY HOSPITALITY FRANCHISING, LLC**, a Delaware limited liability company ("Licensor"), and **110 SUNPORT, L.L.C.**, a New Mexico limited liability company ("Licensee") whose address is 1520 Tramway Boulevard NE, Suite 200, Albuquerque, NM 87112.

**The Parties Agree As Follows:**

1.      **THE LICENSE:**

Licensor operates and licenses a system designed to provide a distinctive, high quality hotel service to the public under the names "Holiday Inn®", "Holiday Inn Express®" and "Holiday Inn Resort®" (the "System" as defined in paragraph 1.B. below). High standards established by Licensor are the essence of the System.   Future investments may be required of Licensee under this License.   Licensee has independently investigated the risks of the business to be operated hereunder, including current and potential market conditions, competitive factors and risks; has read Licensor's Franchise Disclosure Document for prospective Holiday Inn, Holiday Inn Resort and Holiday Inn Express brand group franchisees; and has made an independent evaluation of all such facts.  Neither Licensor nor any other person on Licensor's behalf has made any representation to Licensee concerning this License not fully set forth herein.  Aware of the relevant facts, Licensee desires to enter into this License in order to obtain a license to use the System in the operation of the brand of hotel identified in paragraph 15.A. below located at 1921 Yale Boulevard SE, Albuquerque, NM 87106 (the "Hotel").

A.      **The Hotel:**

The Hotel comprises all structures, facilities, appurtenances, furniture, fixtures, equipment, and entry, exit, parking and other areas from time to time located on the land identified by Licensor in anticipation of this License, or located on any land from time to time approved by Licensor for additions, signs or other facilities. The Hotel now includes the facilities listed on Attachment "A" hereto. No change in the number of approved guest rooms or suites and no other significant change in the Hotel or in the manner in which the Hotel rooms and services are offered to the public (including timesharing and condominium hotel projects and other projects not involving short term stays by transient guests) may be made without Licensor's written approval.  Licensee represents that it is entitled to possession of the Hotel during the entire license term without restrictions that would interfere with anything contemplated in this License.  Throughout this License, the words "room" and "guest room" are intended to include the word "suites" unless otherwise indicated.

B.      **The System:**

The System includes all elements which are designed to identify Holiday Inn, Holiday Inn Express and Holiday Inn Resort branded hotels to the public or are designed to be associated with those hotels or to contribute to such identification or association and all elements which identify or reflect the quality standards and business practices of such hotels, all as specified in this License or as designated from time to time by Licensor. The System at present includes, but is not limited to, the principal trade and/or service marks Holiday Inn®, Holiday Inn Express®, Holiday Inn Express® & Suites, Holiday Inn® & Suites and  Holiday Inn® Resort, (as appropriate to the specific hotel operation to which it pertains), the service mark Holidex® and the other Marks (as defined in paragraph 7.B. below), and intellectual property rights made available to licensees of the System by reason of a license; all rights to domain names and other identifications or elements used in electronic commerce as may be designated from time to time by Licensor in accordance with Licensor's specifications to be part of the System; access to a reservation service operated in accordance with specifications established by Licensor from time to time; distribution of advertising, publicity and other marketing programs and materials; architectural drawings and architectural works; the furnishing of training programs and materials; confidential or proprietary information standards, specifications and policies for construction, furnishings, operation, appearance and service of the Hotel, and other requirements as stated or referred to in this License and from time to time in Licensor's brand standards for System hotels (the "Standards") or in other communications to Licensee; and programs for

1                                          LA 2018

inspecting the Hotel, measuring and assessing service, quality and consumer opinion and consulting with Licensee. The Standards and all changes to the Standards may be presented in any format, including but not limited to print, electronic or other media.  Licensor may add elements to the System or modify, alter or delete elements of the System in its sole judgment from time to time.

## 2.    GRANT OF LICENSE:

Licensor hereby grants to Licensee a non-exclusive license to use the System only at the Hotel, but only in accordance with this License and only during the "License Term" beginning with the Term Commencement Date and terminating as provided under paragraph 12 hereof. The License applies to the location of the Hotel as specified in paragraph 1 herein (the "Location") and to no other location.  Licensee acknowledges that Licensor, its divisions, subsidiaries, affiliates and parents are and may in the future be engaged in other business activities including lodging and related activities, and that Licensee is acquiring no rights hereunder other than the right to use the System as specifically defined herein in accordance with the terms of this License.

This License does not limit Licensor's right or the rights of any parent, subsidiary or affiliate of Licensor, to use or license the System or any part thereof or to engage in or license any business activity at any other location, including, without limitation, the licensing, franchising, ownership, operation and/or management of lodging facilities and related activities under the names and Marks associated with the System and/or any other names and marks.  Licensee acknowledges that Licensor's rights to use and/or license the System, referenced immediately above, pre-date this License and are not limited or changed by the terms of this License.  Licensee agrees that by acknowledging those rights, the parties do not intend to make Licensor's exercise of such rights subject to rules applicable to contractual performance or the exercise of contractual discretion under this License.

## 3.    LICENSEE'S RESPONSIBILITIES:

### A.    Operational and Other Requirements:

Throughout the entire License Term, Licensee will at its sole cost and expense:

(1)    maintain a high moral and ethical standard and atmosphere at the Hotel;

(2)    maintain the Hotel in a clean, safe and orderly manner and in first class condition;

(3)    provide efficient, courteous and high-quality service to the public including, without limitation, maintaining minimum product and service quality standards and scores for quality assurance programs established and maintained by Licensor, as such programs may be modified by Licensor from time to time;

(4)    operate the Hotel 24 hours a day every day except as otherwise permitted by Licensor based on special circumstances;

(5)    strictly comply in all respects with the Standards (as they may from time to time be modified or revised by Licensor) and with all other policies, procedures and requirements of Licensor which may be from time to time communicated to Licensee (which communication, at Licensor's option, may be in hard paper copy or digital, electronic or computerized form, and Licensee must pay any costs to retrieve, review, use or access such digital, electronic or computerized communication);

(6)    strictly comply with all of Licensor's standards and specifications for goods and services used in the operation of the Hotel and other reasonable requirements to protect the System and the Hotel from unreliable sources of supply;

(7)    strictly comply with Licensor's requirements as to the:

(a)    type of services and products that may be used, promoted or offered at the Hotel;

(b)    type and quality of services and products that, to supplement services listed on Attachment "A", must be used, promoted or offered at the Hotel;

(c)    use, display, style and type of signage and of all other forms of identification at or pertaining to the Hotel, including but not limited to any use of the Holiday Inn name or any other of Licensor's service marks, trademarks or copyrights (in all formats, including but not limited to print, electronic or other media), which are seen by members of the consuming public or used to identify the Hotel to actual or prospective consumers;

2

(d)    directory and reservation service listings of the Hotel;

(e)    training of persons to be involved in the operation of the Hotel;

(f)    participation in all marketing, reservation service, advertising, training and operating programs designated by Licensor as System-wide (or area-wide) programs in the best interests of hotels using the System including, without limitation, all guest frequency or loyalty programs related to the System;

(g)    maintenance, repair, appearance and condition of, and customer service at, the Hotel, including, without limitation, participation in all guest complaint programs and quality assurance programs established and maintained by Licensor, as such programs may be modified by Licensor from time to time;

(h)    quality and types of services offered to customers at the Hotel;

(i)    maintenance of a capital reserve and adherence to capital reinvestment and renovation cycles (as further specified in paragraph 14.L. hereof and as Licensor may supplement from time to time by the Standards);

(8)    use such automated guest service and/or hotel management and/or telephone or telecommunication system(s) which Licensor deems to be in the best interests of the System, including any additions, enhancements, supplements, or variants thereof which may be developed during the term hereof;

(9)    participate in and use those reservation services which Licensor deems to be in the best interests of the System, including any additions, enhancements, supplements or variants thereof which may be developed during the term hereof;

(10)   adopt all improvements or changes to the System as may be designated by Licensor from time to time;

(11)   with respect to all aspects of this License and the Hotel and its ownership, development and operation, strictly comply with all applicable laws, rules, regulations, requirements, codes, orders, ordinances and standards of all governmental jurisdictions in which the Hotel is located or that are otherwise applicable to Licensee or the Hotel, pay timely all taxes and other governmental fees, assessments and impositions, and timely obtain and maintain throughout the License Term all governmental licenses, authorizations and permits necessary to own (or lease, as may be applicable) and operate the Hotel in accordance with the System;

(12)   permit inspection of the Hotel by Licensor's representatives at any time and give them free lodging for such time as may be reasonably necessary to complete their inspections;

(13)   promote the Hotel on a local or regional basis subject to Licensor's requirements as to form, content and prior approvals;

(14)   ensure that no part of the Hotel or the System is used to further or promote a competing business or other lodging facility, except as Licensor may approve for businesses or lodging facilities owned, licensed, operated or otherwise approved by Licensor or its parents, divisions, subsidiaries, and affiliates;

(15)   use every reasonable means to encourage use of Holiday Inn facilities everywhere by the public;

(16)   in all respects use Licensee's best efforts to reflect credit upon and create favorable public response to the name "Holiday Inn";

(17)   promptly pay to Licensor all amounts due Licensor, its parents, subsidiaries and affiliates as royalties or fees, whether or not arising out of this License, or for goods or services purchased by Licensee for use at the Hotel; and

(18)   strictly comply with Licensor's requirements concerning confidentiality of information, and in particular Licensee shall not disclose without Licensor's written permission, (i) information pertaining to Licensor's marketing, reservations, quality assurance, guest loyalty and satisfaction, technology or other systems or programs that has not been intentionally disclosed to the public by Licensor, (ii) any of the Standards, or (iii) any of the commercial terms or provisions of this License.

**B.**   **Fees:**

(1)   For each month (or part of a month) during the License Term, Licensee will pay to Licensor by the 15th of the following month, except in the case of the Technology Fee in paragraph 3.B.(1)(c) below, which is payable monthly in advance:

(a)   a royalty of **6% of the Gross Rooms Revenue** attributable to or payable for rental of guest rooms at the Hotel (including, without limitation, any mandatory fee or surcharge charged to all or substantially all guests renting a room, including, but not limited to, resort fees), with no deduction for any item including, but not limited to, any adjustment for the cost of any food and beverage items provided or made available to a guest as an incident of a guest room rental, except for deductions for sales and room taxes only ("Gross Rooms Revenue");

(b)   a "Services Contribution" equal to the percentage of Gross Rooms Revenue set forth in paragraph 15 below, to be used by Licensor for marketing, reservations, and other related activities which, in Licensor's sole business judgment as to the long-term interests of the System, support marketing, reservations and other related functions. Costs that Licensee incurs in the acquisition, installation or maintenance of reservations services, equipment or training, or in its own marketing activities, do not constitute payment of the "Services Contribution". The Services Contribution is subject to change by Licensor from time to time if either approved by: (i) a majority of members (which shall be counted on the basis of one hotel, one vote) of the System who represent a majority of the hotels to be subject to the increase; or (ii) approved by a majority of the members of the System or the "IHG Owners Association" (the franchisee association or successor sanctioned as such by Licensor) at a meeting of System licensees or at an annual IHG Owners Association meeting either as may be convened by Licensor upon no less than 45 days' advance notice. Licensor may, in its sole judgment, upon 30 days' prior notice, increase this Services Contribution by an amount not to exceed 1% of Gross Rooms Revenue and such increase shall be effective for a period no longer than 12 months; provided that, in the event of such increase, Licensor shall not make such a discretionary increase again for a period of 24 months after the expiration of any such increase;

(c)   a monthly Technology Fee of $14.08 for each guest room at the Hotel to be used by Licensor for provision of technology services, such as, but not limited to satellite communications services to the Hotel, plus such increases as Licensor may judge reasonable, but in no case exceeding in any calendar year 10% of the fee in effect at the beginning of that year (the Technology Fee does not include the cost, installation, maintenance or repair of any equipment at the Hotel);

(d)   all fees due for travel agent commission programs, including Electronic Commission Services and any Field Marketing Co-op programs attributable to the Hotel, and all fees due in connection with mandatory marketing, technology, guest loyalty and frequency, guest satisfaction, quality assurance, training, new hotel opening and other systems and programs established by Licensor, its parents, subsidiaries or its affiliated entities relating to the System; and

(e)   an amount equal to any sales, gross receipts or similar tax imposed on Licensor and calculated solely on payments required hereunder, unless the tax is an optional alternative to an income tax otherwise payable by Licensor.

Licensor may, at its election, require Licensee to pay all outstanding fees by electronic funds transfer/direct debit of account or other similar technology designed to accomplish the same purpose.

Licensee will operate the Hotel so as to maximize Gross Rooms Revenue of the Hotel consistent with sound marketing and industry practice and will not engage in any conduct that reduces Gross Rooms Revenue of the Hotel in order to further other business activities.

LA 2018

(2)    A standard application fee for additional guest rooms as set forth in Licensor's then current disclosure document for System hotels will be charged upon application for any additional guest rooms to be added to the Hotel.

(3)    Additional royalties may be charged on revenues (or upon any other basis, if so determined by Licensor) from any activity if it is added at the Hotel by mutual agreement and:

    (a)    such activity is not now offered at System hotels generally and is likely to benefit significantly from or be identified significantly with the Holiday Inn name or other aspects of the System; or

    (b)    such activity is designed or developed by or for Licensor.

(4)    Charges may be made for optional products or services accepted by Licensee from Licensor, either in accordance with current practice or as developed in the future.

(5)    Each payment under this paragraph 3.B., except the standard additional guest room application fee or other fee not determined from Gross Rooms Revenue, shall be accompanied by the monthly statement referred to in paragraph 8.A. Licensor may apply any amounts received under this License to any amounts due under this License. If any amounts under this License are not paid when due, such non-payment shall constitute a breach of this License and, in addition, such unpaid amounts will accrue interest beginning on the first day of the month following the due date at 1½% per month or the maximum interest permitted by applicable law, whichever is less.

(6)    Local and regional marketing programs and related activities may be conducted by Licensee, but only at Licensee's expense and subject to Licensor's requirements. Reasonable charges may be made for optional advertising materials ordered or supplied by Licensor to Licensee for such programs and activities.

(7)    Licensor has the right, in its sole judgment, to require Licensee to tender all or any part of the payments due to Licensor under this License to Licensor, or one or more of Licensor's parents, subsidiaries, affiliated entities or other designees.

## 4.    LICENSOR'S RESPONSIBILITIES:

### A.    Training:

During the License Term, Licensor will continue to specify and provide required and optional training services and programs at various locations. A fee may be charged for certain required and optional training services. Travel, lodging and other expenses of Licensee and its employees will be borne by Licensee. Reasonable charges also may be assessed for training materials.

### B.    Reservation Services:

During the License Term, so long as Licensee is in full compliance with its obligations hereunder, Licensor will afford Licensee access to reservation service for the Hotel on terms consistent with this License. However, Licensor has no obligation to afford Licensee access to reservation service for the Hotel regarding reservations for any date after the expiration date of this License or for any date after the termination date established by Licensor, following any applicable notice period or any applicable opportunity to cure.

### C.    Consultation on Operations, Facilities and Marketing:

During the License Term, Licensor will, from time to time at Licensor's election, make available to Licensee consultation and advice in connection with operations, facilities and marketing. Licensor may from time to time furnish to Licensee names of suppliers or recommend to Licensee suppliers of goods and services required or useful in the operation of the Hotel; however, Licensor is not obligated to furnish any such names or to continue doing so, and Licensee is under no obligation to use any such supplier, unless expressly required to do so by the terms of this License, the Standards or otherwise. In identifying or recommending suppliers, Licensor exercises its business judgment based on its information as of that date and its sense of the long-term interests of the System. Licensor's identification or recommendation of a supplier is not a warranty of the financial condition or performance of any supplier or of any other factor, and Licensee's use of an identified or recommended supplier that sells products or

services meeting Licensor's standards and specifications may facilitate compliance with those standards and specifications, but it is not a substitute for such compliance.

### D.   Maintenance of Standards:

Licensor will conscientiously seek to maintain high standards of quality, cleanliness, appearance and service at all hotels using the System so as to promote, protect and enhance the public image and reputation of the Holiday Inn name and to increase the demand for services offered by the System. Licensor's judgment in such matters shall be controlling in all respects, and it shall have wide latitude in making such judgments.

### E.   Application of Standards:

The Hotel and all other hotels operated under the System will be subject to the Standards, as they may from time to time be modified or revised by Licensor, including limited exceptions from compliance which may be made based on local conditions, type of hotel or special circumstances. The Standards and any modification to them can be delivered by Licensor to Licensee in hard paper copy or, at Licensor's option, be made available to Licensee in digital, electronic or other computerized form. If communicated in digital, electronic or other computerized form, Licensee must pay any costs to retrieve, review, use or access the Standards. The Standards are confidential and remain the property of Licensor.

### F.   Other Arrangements for Marketing, Etc.:

Licensor may enter into arrangements for development, reservation services, marketing, operations, administrative, training, technical and support functions, facilities, programs, services and/or personnel with any other entity, and may use any facilities, programs, services or personnel used in connection with the System, in connection with any business activities of its parents, subsidiaries, divisions or affiliates.

### G.   Use of Services Contribution:

Licensor will make available and use Services Contribution funds for various activities as may be computed on the basis generally applicable to licensees of the System. Licensor is not obligated to expend funds for marketing, reservations or related services in excess of the amounts received from licensees using the System and those funds made available by Licensor as set forth above. Services Contribution funds are not intended to benefit any specific market or hotel. Licensor and its affiliates have no obligations to spend from Services Contribution funds, or otherwise, any amount fixed or proportionate to the amount of Services Contributions Licensee pays, nor do Licensor or its affiliates have any obligation to ensure that Licensee benefits directly or proportionately from Services Contributions paid or expenditures made from collected Services Contributions. Local and regional marketing programs and related activities may be conducted by Licensee but only at Licensee's expense and subject to Licensor's requirements. Reasonable charges may be made for optional advertising materials ordered or used by Licensee for such programs and activities.

### H.   Performance of Licensor's Obligations:

Licensee understands and agrees that Licensor, in its sole judgment, may perform any or all of its obligations under this License directly or through Licensor's parents, affiliates, subsidiaries or other designees.

## 5.   APPEALS, CHANGES IN THE STANDARDS:

### A.   Appeals:

Decisions, other than termination notices or decisions of Licensor's designated internal franchise committee ("Franchise Committee"), made on behalf of Licensor specifically with reference to the Hotel may be appealed to Licensor's Franchise Committee if done promptly after Licensee has diligently sought relief through Licensor's normal channels of authority. With the approval in writing of any member of the Franchise Committee, the decision may be further appealed to the Executive Committee of Licensor's Board of Directors.

6

LA 2018

**B.     Changes in the Standards:**

Each change in the Standards shall be communicated in writing to Licensee at least 30 days before it goes into effect (which communication may be in hard paper copy or, at Licensor's option, in digital, electronic or other computerized form, and if such communication is in digital, electronic or other computerized form, Licensee must pay any costs to retrieve, review, use or access same). Licensor's Franchise Committee or its equivalent, or designee subcommittee, must approve any such change and must determine that the change was formulated in good faith in the best interests of the System, after seeking the advice and counsel of the appropriate committee of the IHG Owners Association.

**C.     Decisions on Appeal:**

Licensor shall have the right to decide appeals under this paragraph 5, solely on the basis of written submissions. No appeal will suspend a decision or change, until and unless the appeal is successful. Any action taken by Licensor in the enforcement of this License that is shown to be arbitrary or capricious will be rescinded by Licensor to the extent feasible, but wide discretion and latitude will be allowed to the judgment of Licensor in the discharge of its overriding responsibility to maintain and improve the standards, performance and facilities of the hotels using the Holiday Inn, Holiday Inn & Suites, Holiday Inn Express, Holiday Inn Express & Suites, Holiday Inn Resort or any other Holiday Inn hotel brand or Holiday Inn name. The Standards will apply to all hotels operated under the System by Licensor and its licensees. Limited exceptions from compliance may be made in Licensor's sole discretion based on local conditions or special circumstances.

**D.     Limitation on Appeal Rights:**

Licensee will not be arbitrary, capricious or unreasonable in exercising its appeal (or any other) rights under this License, and will use them only for the purpose for which intended.

**6.     IHG OWNERS ASSOCIATION:**

**A.     Membership:**

Licensee, other licensees of the System, and Licensor are eligible for membership in the IHG Owners Association (the franchise association or successor sanctioned as such by Licensor) and are entitled to vote at its meetings on the basis of one hotel, one vote, provided that Licensee or Licensor, as the case may be, has paid all its dues and fees owing to the IHG Owners Association. The purpose of the IHG Owners Association will be to consider and discuss, and make recommendations on common problems relating to the operation of System hotels. Licensor will seek the advice and counsel of the IHG Owners Association Board of Directors or, subject to the approval of Licensor, such committees, directors or officers of the IHG Owners Association to which or to whom the IHG Owners Association Board of Directors may delegate such responsibilities.

**B.     Function of Committees:**

IHG Owners Association committees, their functions and their members will be subject to approval in writing by Licensor, which approval will not be unreasonably withheld. Recognizing that the IHG Owners Association must function in a manner consistent with the best interests of all persons using the System, Licensee and Licensor will use their best efforts to cause the governing rules of the IHG Owners Association to be consistent with this License.

**7.     PROPRIETARY RIGHTS:**

**A.     Ownership of System:**

Licensee acknowledges and will not contest, either directly or indirectly, Licensor's and its subsidiaries', affiliates' and parents' unrestricted and exclusive ownership of and right to use the System and any element(s) or component(s) thereof, or that Licensor or any of its parents, subsidiaries or affiliated entities has the sole and exclusive right to grant licenses to use all or any element(s) or component(s) of the System and will not take any other action in derogation of such ownership and rights of Licensor and any of its parents, subsidiaries or affiliated entities. Licensee specifically agrees and acknowledges that Licensor owns or is licensed to use the names and marks Holiday Inn, Holiday Inn & Suites, Holiday Inn

LA 2018

Express, Holiday Inn Express & Suites, Holiday Inn Resort,  and all other Marks (as defined in paragraph 7.B. below) and other elements associated with the System, as defined in paragraph 1.B. of this License, or derived therefrom (including but not limited to domain names or other identifications or elements used in electronic commerce), together with the goodwill symbolized thereby, and that Licensee will not contest directly or indirectly the validity or ownership of the Marks or take any other action in derogation of such validity or ownership  either during the term of this License or after its termination.  All improvements, modifications and additions whenever made to or associated with the System by the parties hereto or anyone else, and all service marks, trademarks, copyrights, and service mark,  trademark, domain name or similar registrations at any time used, applied for or granted in connection with the System, and all goodwill arising from Licensee's use of Licensor's Marks and other intellectual property, including (without limitation) local goodwill, shall inure to the benefit of and become the property of Licensor.  Upon expiration or termination of this License, no monetary amount shall be assigned as attributable to any goodwill associated with Licensee's use of the System or any element(s) or component(s) of the System including any trademarks or service marks licensed hereunder.

**B.**     **Trademark Disputes:**

The "Marks" means the names and marks Holiday Inn, Holiday Inn Express, Holiday Inn Resort, Holiday Inn & Suites, Holiday Inn Express & Suites and Holidex, and their distinguishing characteristics and the other service marks, trademarks, trade names, slogans, commercial symbols, logos, trade dress, copyrighted material and intellectual property associated with the System, including, without limitation, those which Licensor may designate in the future for use and those which Licensor does not designate as withdrawn from use (the "Marks"). Licensee shall notify Licensor immediately of (i) an infringement, or a challenge to Licensee's use of any of the Marks; (ii) any objections, demands, controversies, allegations or actions asserted or taken by third parties involving any of the Marks or any part of the System of which Licensee becomes aware; and, (iii) any potentially infringing or unauthorized uses of any of the Marks or any part of the System of which Licensee becomes aware.  Licensor, its parent or one of its affiliated entities, will have the sole and exclusive right to handle disputes with third parties concerning use of all or any part of the Marks or System, and Licensee will, at its reasonable expense, extend its full cooperation to Licensor in all such matters.  All recoveries made as a result of disputes with third parties regarding use of the Marks or System or any part thereof shall be for the account of Licensor.  Licensor need not initiate suit against alleged imitators or infringers, and may settle any dispute by grant of a license or otherwise.  Licensee will not initiate any suit or proceeding against alleged imitators or infringers or any other suit or proceeding to enforce or protect the Marks or System.

C.    **Protection and Use of Name and the Marks**:

Both parties will make every effort consistent with the foregoing to protect and maintain the Marks.  Licensee agrees to execute any documents deemed necessary by Licensor or its counsel to obtain or maintain  protection for the Marks or any part of the System or to maintain their continued validity and enforceability.  Licensee agrees to use the Marks associated with the System (i)  only in connection with the operation of the Hotel during the License Term following opening of the Hotel in the System or at such earlier time as is expressly and specifically authorized by Licensor, (ii)  only in the manner expressly authorized by Licensor and (iii) in no way that would tend to allow the Marks to become generic, lose their distinctiveness, become liable to mislead the public or be detrimental to or inconsistent with the good name, goodwill or favorable reputation and image of the Marks or Licensor.  Licensee acknowledges that any unauthorized, unpermitted or prohibited use of any of the Marks shall constitute infringement of Licensor's rights. The restrictions and requirements that limit Licensee's use of the Marks and identifications apply to all formats (including print, electronic and other media) and include domain names, URL, and other identifications or elements used in electronic commerce.

D.    **Modification or Discontinuation of the Marks**:

If Licensor modifies or discontinues use of any of the Marks licensed under this License as a result of any proceeding or settlement or for any other reason, then Licensee agrees to comply with Licensor's instructions in order to implement such modification or discontinuation.  Licensee further agrees that it will have no right to any compensation or other remedies from Licensor or any of its parents, subsidiaries or affiliated entities as a consequence of any such modification or discontinuation.

E.    **Architectural Modifications**:

If Licensee engages a third party, in compliance with the terms of this License and the franchise disclosure document, to prepare modifications, additions, and/or improvements to any architectural drawings or architectural works licensed to Licensee as part of the System ("Architectural Modifications"), Licensee shall cause such third party to assign all copyrights in such Architectural Modifications to Licensor in such form as Licensor may specify from time to time.

8.    **RECORDS AND AUDITS:**

A.    **Monthly Statements and Data**:

At least monthly, Licensee shall prepare a statement which will include all information concerning the Hotel's Gross Rooms Revenue, other revenues generated at the Hotel, room occupancy rates, reservation data and other information required by Licensor that may be useful (in Licensor's sole business judgment) in connection with marketing, reservations, guest loyalty and satisfaction and other functions, purposes or requirements of Licensor, its parents, subsidiaries or affiliated entities (collectively, the "Data").  Subject to applicable law, the Data shall be the property of Licensor although Licensee shall have the non-exclusive right to use the Data so long as its use is lawful and in connection with owning or operating the Hotel during the License Term.  The Data will be permanently recorded and retained by Licensee as may be reasonably required by Licensor.  By the third of each month, Licensee will submit to Licensor a statement setting forth the Data and reflecting the computation of the amounts then due under paragraph 3.B.  The statement and Data will be in such form (including but not limited to electronic transmission or automatic capture) and detail as Licensor may reasonably request from time to time, and may be used by Licensor for its reasonable purposes, including without limitation for company and industry reporting purposes.  Licensee agrees that any Data provided by it pursuant to this paragraph 8.A. as well as any other reports, data, information or material provided to Licensor pursuant to or in connection with this License shall be true and correct and not misleading and shall comply with all standards, policies and requirements of Licensor with respect to privacy and security of Data related to guests and other customers of the Hotel.

B.    **Preparation and Maintenance of Records**:

Licensee will, in a manner and form satisfactory to Licensor and utilizing accounting and reporting standards as reasonably required by Licensor, prepare on a current basis (and preserve for no less than four years or Licensor's record retention requirements, whichever is longer), complete and accurate records concerning Gross Rooms Revenue and all financial, operating, marketing and other

aspects of the Hotel, and maintain an accounting system which fully and accurately reflects all financial aspects of the Hotel and its business. Such records shall include but not be limited to books of account, tax returns, governmental reports, register tapes, daily reports, and complete quarterly and annual financial statements (profit and loss statements, balance sheets and cash flow statements). The requirement to preserve records as set forth herein shall continue beyond the expiration or sooner termination of the License Term.

### C.    Audit:

Licensor may require Licensee to have the Hotel's Gross Rooms Revenue and/or monies due hereunder computed and certified as accurate by a certified public accountant. During the License Term and for two years afterward, Licensor and its authorized agents will have the right to verify information required under this License by requesting, receiving, inspecting and auditing, at all reasonable times, any and all records referred to above wherever they may be located (or elsewhere if reasonably requested by Licensor). If any such inspection or audit discloses a deficiency in any payments due hereunder, and the deficiency in any payment is not offset by overpayment, Licensee shall immediately pay to Licensor the deficiency and interest thereon as provided in paragraph 3.B.(5) along with an audit fee of $3,000, as such amount may be increased on a System-wide basis. No acceptance by Licensor of any audit fee or deficiency payment shall be deemed to waive any right of Licensor to pursue a default under the License by reason of such underpayment. If the audit does not result in a deficiency being assessed, then no audit fee will be assessed. If the audit discloses an overpayment, Licensor will credit this overpayment, without interest, against future payments due from Licensee under this License or if this License has terminated, promptly refund it, without interest, to Licensee.

### D.    Annual Financial Statements:

Licensee will submit to Licensor as soon as available but not later than 90 days after the end of Licensee's fiscal year, and in a format as reasonably required by Licensor, complete financial statements for such year. Licensee will certify them to be true and correct and to have been prepared in accordance with generally accepted accounting principles and the Uniform System of Accounts for the Lodging Industry, consistently applied, and any false certification will be a breach of this License.

## 9.    INDEMNITY AND INSURANCE:

### A.    Indemnity:

Licensee will indemnify Licensor, its parents, subsidiaries and affiliated entities and each of their respective officers, directors, employees, agents, successors and assigns (collectively, the "Indemnitees") against, hold them harmless from, and promptly reimburse them for all payments of money (fines, damages, legal fees, expenses, settlement amounts, judgments, etc.) by reason of any claim, demand, tax, penalty, or judicial or administrative investigation or proceeding whenever asserted or filed (even where negligence of any of the Indemnitees is alleged), regardless of whether any of the foregoing is reduced to judgment, arising from any claimed occurrence at or related to the Hotel or any act, error, neglect, omission or obligation of Licensee or anyone associated or affiliated with Licensee or the Hotel. Licensee agrees to give Licensor written notice of any such judicial or administrative investigation or proceeding or any other event that could be the basis for a claim for indemnification by any Indemnitee within three days of Licensee's knowledge of it. At the election of Licensor, Licensee will also defend Licensor and the other Indemnitees against the indemnified matters. In any event, Licensor will have the right, through counsel of its choice, to control any matter to the extent it could directly or indirectly affect Licensor and/or any of the other Indemnitees. Licensor will have the right, at any time it considers appropriate, to offer, order, consent or agree to settlements or take any other remedial or corrective actions it considers expedient with respect to any action, suit, proceeding, claim, demand, inquiry or investigation if, in Licensor's sole judgment, there are reasonable grounds to do so. Under no circumstance will Licensor or any of the other Indemnitees be required to seek recovery from third parties or otherwise mitigate its or their losses to maintain a claim against Licensee. Licensee agrees that any failure to pursue recovery from third parties or mitigate loss will in no way reduce the amounts recoverable by Licensor or any of the other Indemnitees from Licensee. Licensee agrees to pay Licensor all expenses, including attorneys' fees and court costs, incurred by Licensor or any of the other Indemnities, and their successors and assigns, to remedy any defaults of or enforce or defend itself or any rights under this License **(including any claim, cross claim or counter-claim brought by Licensee, except to the extent that Licensee is the**

10                                                      LA 2018

**prevailing party under such claim),** to effect termination of this License or collect any amounts due under this License.

      **B.**    **Insurance:**

      During the License Term, Licensee will comply with all insurance requirements of any lease or mortgage covering the Hotel, and Licensor's specifications for insurance as to the amount and type of coverage as may be reasonably specified by Licensor from time to time in writing, and will in any event maintain on the Hotel as a minimum, the following insurance underwritten by a reputable insurer approved by Licensor:

      (1)    employer's liability with minimum limits of $1,000,000 per occurrence; and

      (2)    worker's compensation insurance;

      (3)    employment practices liability insurance (including coverage for harassment, discrimination and wrongful termination, and covering defense and indemnity costs) with a limit of $1,000,000 in the aggregate;

      (4)    the holder of the liquor license will maintain liquor liability insurance with single limit coverage for personal and bodily injury and property damage of at least $15,000,000 per occurrence naming Licensor and its parents, subsidiaries and affiliates, (and Licensee if applicable) as additional insureds; and,

      (5)    commercial general liability insurance, (including coverage for product liability, completed operations, contractual liability, host liquor liability and fire legal liability) and business automobile liability insurance (including hired and non-owned liability) with single-limit coverage for personal and bodily injury and property damage of at least $15,000,000 per occurrence, naming Licensor and its parents, subsidiaries and affiliates as additional insureds.   In connection with all construction at the Hotel during the License Term, Licensee will cause the general contractor to maintain commercial general liability insurance (including coverage for product liability, completed operations and contractual liability) and business automobile liability insurance (including hired and non-owned liability) with limits of at least $15,000,000 per occurrence for personal and bodily injury and property damage underwritten with insurers approved by Licensor.   Licensor and its parents, subsidiaries and affiliates will be named as additional insureds.

      (6)    If multiple locations are insured on policies containing an aggregate limit, then the aggregate limit must apply on a per location aggregate basis.

      (7)    Licensee will ensure the royalties, Services Contributions and any other sums payable to Licensor are insured within the Licensee's business interruption insurance policy.  The policy should insure against 'all risks' of physical loss or damage, and be endorsed to provide for payments to be made directly to Licensor.

      (8)    All policies must be written on a fully insured basis.  Deductibles or self-insured retentions are subject to Licensor's approval on an individual basis.

      **C.**    **Evidence of Insurance:**

      At all times during the License Term, Licensee will furnish to Licensor certificates of insurance evidencing the term and limits of coverage in force, names of applicable insurers and persons insured. Revised certificates of insurance shall be forwarded to Licensor each time a change in coverage or insurance carrier is made by Licensee, and/or upon renewal of expired coverages. At Licensor's option, Licensee may be required to provide certified insurance policy copies.  If Licensee fails to procure or maintain the insurance coverages and limits set forth in paragraph 9.B., Licensor will have the right and authority (but not the obligation) to procure such insurance at Licensee's cost, including any costs incurred by Licensor for procurement and maintenance of such insurance.

**10.**    **TRANSFER:**

      **A.**    **Transfer by Licensor:**

      Licensor shall have the right to transfer or assign this License or any of Licensor's rights, duties or obligations hereunder, in whole or in part, to any person or legal entity without requirement of prior notice to, or consent of, Licensee.

          LA 2018

**B.**     <u>Transfer by Licensee</u>:

Licensee understands and acknowledges that the rights and duties set forth in this License are personal to Licensee, and that Licensor has granted this License in reliance on the business skill, financial capacity, and personal character of Licensee (if Licensee is a natural person), and upon the owners, members, partners or stockholders of Licensee (if Licensee is a partnership, company,corporation or other legal entity (an "Entity")). Accordingly, neither Licensee nor any immediate or remote successor to any part of Licensee's interest in this License, nor any natural person or Entity which directly or indirectly owns an Equity Interest (as that term is defined below) in Licensee or this License, may sell, assign, transfer, convey, pledge, mortgage, encumber, or give away, any direct or indirect interest in this License or Equity Interest in Licensee, except as expressly provided in this License. Any purported sale, assignment, transfer, conveyance, pledge, mortgage, or encumbrance by operation of law or otherwise, of any interest, collaterally or otherwise, in this License or any Equity Interest in Licensee not in accordance with the provisions of this License, shall be null and void and shall constitute a material breach of this License, for which Licensor may terminate this License without opportunity to cure pursuant to paragraph 12.C. of this License.

(1)     For the purposes of this paragraph 10, the term "Equity Interest" shall mean any stock ownership, membership, or partnership interests in Licensee and the interests of any partner, whether general or limited, in any partnership, with respect to such partnership, and of any stockholder, member or owner of any corporation or company with respect to such corporation or company, which partnership, corporation or company is Licensee hereunder or which partnership, corporation or company owns a direct or indirect beneficial interest in Licensee. References in this License to "publicly-traded Equity Interests" shall mean any Equity Interests which are traded on any securities exchange or are quoted in any publication or electronic reporting service maintained by the National Association of Securities Dealers, Inc. or any of its successors.

(2)     If Licensee is an Entity, Licensee represents that the Equity Interests in Licensee are directly and (if applicable) indirectly owned, as shown in Attachment "A."

(3)     In computing changes of Equity Interests pursuant to this paragraph 10, limited partners will not be distinguished from general partners, and Licensor's judgment will be final if there is any question as to the definition of Equity Interests or as to the computation of relative Equity Interests, including transfers of Equity Interests, the principal considerations being:

(a)     direct and indirect power to exercise control over the affairs of Licensee;

(b)     direct and indirect right to share in Licensee's profits; and

(c)     amounts directly or indirectly exposed at risk in Licensee's business.

**C.**     <u>Transfer of Equity Interests That Are Not Publicly Traded</u>:

Except where otherwise provided in this License, Equity Interests in Licensee that are not publicly-traded may be transferred, issued, or eliminated with Licensor's prior written consent, which will not be unreasonably withheld, provided that after the transaction:

(a)     Less than 50% of all Equity Interests in Licensee will have changed hands since Licensee first became a party to this License, or

(b)     Less than 80% of all Equity Interests in Licensee will have changed hands since Licensee first became a party to this License, and no Equity Interest(s) will be held by any natural person or Entity other than those who held them when Licensee first became a party to this License.

**D.**     <u>Transfers of Publicly-Traded Equity Interests</u>:

(1)     Except as otherwise provided in this License, publicly-traded Equity Interests in Licensee may be transferred without Licensor's consent but only if:

(a)     immediately before the proposed transfer, the transferor owns less than 25% of the Equity Interests in Licensee;

(b)     immediately after the transfer, the transferee will own less than 25% of the Equity Interests in Licensee; and

(c)     the transfer is exempt from registration under federal securities law.

     LA 2018

(2)    Publicly-traded Equity Interests may be transferred with Licensor's written consent, which may not be unreasonably withheld, if the transfer is exempt from registration under federal securities law.

(3)    The chief financial officer of Licensee shall certify annually to Licensor that Licensee is in compliance with the provisions of this paragraph 10.D.  Such certification shall be delivered to Licensor with the annual financial statements referred to in paragraph 8.D.

**E.**    **Transfer of the Hotel by Natural Person:**

(1)    Licensee, if a natural person, may with Licensor's consent, which will not be unreasonably withheld, transfer the Hotel to Licensee's spouse, parent, sibling, son, daughter, niece or nephew  provided that:

    (a)    adequate provision acceptable to Licensor is made for the management of the Hotel;

    (b)    the transferee executes a new license agreement for the unexpired term of this License, on the standard form then being used to license new hotels under the System, except the fees charged thereunder shall be the same as those contained herein including any adjustments to such fees as may have been implemented from time to time in accordance with the terms of this License, and Licensee executes a termination agreement of this License on Licensor's then current form; and

    (c)    Licensee guarantees, on Licensor's then current form, the performance of the new licensee's obligations under the newly executed license agreement.

(2)    Licensee, if a natural person, may, without the consent of Licensor, upon 30 days' prior written notice to Licensor, transfer the Hotel to a corporation entirely owned and controlled by Licensee, provided that prior to such transfer:

    (a)    adequate provision acceptable to Licensor is made for the management of the Hotel;

    (b)    the transferee executes a new license agreement for the unexpired term of this License on the standard form then being used to license new hotels under the System, except the fees charged then shall be the same as those contained herein including any adjustments to such fees as may have been implemented from time to time in accordance with the terms of this License; and Licensee executes a termination agreement of this License on Licensor's then current form; and

    (c)    Licensee guarantees, on Licensor's then current form, the performance of the new licensee's obligations  under the newly executed license agreement.

(3)    If Licensee is a natural person, upon Licensee's death, Licensee's interest in the License may pass in accordance with Licensee's will, or, if Licensee dies intestate, in accordance  with the laws of intestacy governing the distribution of Licensee's estate, provided that:

    (a)    adequate provision acceptable to Licensor has been made for management of the Hotel;

    (b)    Licensor gives written consent, which consent will not be unreasonably withheld;

    (c)    the transferee(s) of Licensee's interest in the License is one or more of the decedent's spouse, parents, siblings, sons, daughters, nieces or nephews; and,

    (d)    Licensee's heirs or legatees promptly advise Licensor and the transferee promptly executes a new license agreement for the unexpired term of this License on the standard form then being used to license new hotels under the System, except the fees charged thereunder shall be the same as contained herein including any adjustments to such fees as may have been implemented from time to time in accordance with the terms of this License, and Licensee's executor or estate administrator executes a termination agreement of this License on Licensor's then current form.

**F.**     **Transfers of Equity Interests in the Licensee Upon Death To Family Members:**

(1)     If an Equity Interest in an Entity is owned by a natural person, the Equity Interest may pass upon such person's death, in accordance with such person's will or, if such person dies intestate, in accordance with the laws of intestacy governing the distribution of such person's estate, provided that:

    (a)     adequate provision acceptable to Licensor is made for management of the Hotel;

    (b)     Licensor gives written consent, which consent will not be unreasonably withheld;

    (c)     the transferee(s) of such Equity Interest is one or more of the decedent's spouse, parents, siblings, sons, daughters, nieces or nephews; and,

    (d)     the transferee(s), or such other natural person or Entity as Licensor may approve, assumes, in writing, on a continuing basis, the decedent's guarantee, if any, of Licensee's obligations under this License.

**G.**     **Registration of a Proposed Transfer of Equity Interests:**

(1)     Any public offering, private placement or other sale of securities in or by Licensee or the Hotel ("Securities") requires Licensor's consent. All materials for the offer or sale of those Securities disseminated to any prospective purchaser thereof, filed with any governmental or quasigovernmental entity or intended for distribution to any form of media must be submitted to Licensor for its review at least sixty (60) days before the date Licensee disseminates or distributes those materials or files them with any governmental agency, including any materials to be used in any offering exempt from registration under any securities laws. Licensee must submit to Licensor a non-refundable Twenty Five Thousand Dollar ($25,000) processing fee with the offering materials and pay any additional costs Licensor may incur in reviewing such materials, including reasonable attorneys' fees. Except as legally required to describe the Hotel in the offering materials, Licensee may not use any of the Marks or otherwise imply Licensor's participation or that of its affiliates, officers, directors, members, managers and employees in such offering or its/their endorsement of any Securities or any Securities offering. Licensor will have the right to approve any description of this License or Licensee's relationship with Licensor, or any use of the Marks, contained in any prospectus, offering memorandum or other communications or materials used by Licensee in the sale or offer of any Securities. Licensor's review of these documents will not in any way be considered Licensor's agreement with any statements contained in those documents, including any projections, or Licensor's acknowledgment or agreement that the documents comply with any applicable laws.

(2)     Licensee may not offer and/or sell any Securities unless Licensee clearly discloses to all purchasers and offerees in any and all Securities offer and/or sale materials that: (i) neither Licensor, nor any of its affiliates, nor any of their respective officers, directors, managers, agents or employees, will in any way be deemed an issuer or underwriter of the Securities, as those terms are defined in applicable securities laws; (ii) neither Licensor, its affiliates nor any of their respective officers, directors, managers, agents and employees will have any liability or responsibility for any financial statements, projections or other financial information contained in any prospectus, offering and solicitation material or similar written or oral communication; plays (or will play) any role in the offer or sale of Licensee's securities; has any responsibility for the creation or contents of any offering and/or solicitation materials (including any prospectus); in no fashion controls (or will control) Licensee's day-to-day business operations or any element or instrumentality thereof; that any individual or entity purchasing Securities must understand that its sole recourse for any alleged or actual impropriety relating to the offer and sale of such Securities and/or Licensee's operation of its business will be against Licensee (and/or, as may be applicable, the seller of such Securities); and, that in no event may such purchaser seek to impose liability arising from or related to such activity, directly or indirectly, upon any of Licensor,

its affiliates or any of their respective officers, directors, managers, agents or employees.

(3) Licensee expressly agrees that its obligations to indemnify and hold harmless Licensor and the other indemnitees under paragraphs 9.A. and 14.J. of this License extends to and embraces liabilities arising from or relating to, directly or indirectly, any and every element of Licensee's offer and/or sale of Securities which Licensee may propose to or does engage in, including (without limitation) any statements, representations or warranties that Licensee and/or its affiliates may give to or receive from any proposed or actual purchaser of such Securities and/or any claim that Licensee, its affiliates and/or the officers, directors, managers, members, agents and employees of each of the foregoing, or Licensee's assignee, engaged in fraud, deceit, violation of securities laws or other illegality in connection with Licensee's proposed or actual offer and/or sale of Securities. As with all other indemnification obligations set forth in this License, this specific indemnification obligation will survive the termination or expiration of this License.

## H.  Change of Ownership:

(1) Notwithstanding any other term or provision of this License to the contrary, neither this License nor any right or interest herein is assignable or transferable by Licensee.

(2) If Licensee (i) receives an offer to purchase or lease the Hotel or any portion thereof, (ii) desires to sell or lease the Hotel or any portion thereof, or (iii) wishes to convey the Hotel, Hotel site, or any interest in the Hotel or Licensee, Licensee shall give prompt written notice thereof to Licensor, stating the identity of the prospective transferee, purchaser or lessee and the terms and conditions of the conveyance, including a copy of any proposed agreement and all other information with respect thereto, that Licensor may reasonably require.

(3) Any (i) transfer of Equity Interests in an Entity (other than a transfer expressly permitted hereunder) or (ii) transfer of all or a material part of the Hotel or Hotel site (if the Hotel or Hotel site is owned directly or indirectly by Licensee or by a natural person or Entity that owns any Equity Interest in Licensee) to a new owner who desires to continue to operate the Hotel as a System hotel, shall constitute a change of ownership requiring submittal of an application for a new license.

(4) Licensor shall process such change of ownership application in accordance with Licensor's then current procedures, criteria and requirements regarding fees, upgrading of the Hotel, financial capacity and guaranty requirements, curing of outstanding defaults, operational abilities and capabilities, prior business dealings, market feasibility and other factors deemed relevant by Licensor. If such change of ownership application is approved by Licensor, the new owner and Licensor shall, upon termination of this License by Licensor, enter into a new license agreement on Licensor's then current form. The new license agreement shall contain Licensor's then current terms (except for duration, which shall reflect the new term agreed by Licensor as part of the approval of the change in ownership of the Hotel), and if required by Licensor, shall contain specified upgrading of the Hotel and other requirements.

(5) If a change of ownership application for the proposed new owner is not approved by Licensor and the conveyance of the Hotel, Hotel site, or any Equity Interest in the Hotel or Equity Interest in Licensee to the proposed new owner occurs, then Licensor shall have the right to terminate this License pursuant to paragraph 12.C. hereof and Licensor shall be entitled to all of its remedies.

## I.  Transfer of Real Estate:

If (i) the real property used in the operation of the Hotel is owned directly or indirectly by Licensee or by a natural person or an Entity that owns any Equity Interest in Licensee and (ii) Licensee or that natural person or Entity proposes to transfer all or a substantial part of such property to a third party, such transfer shall constitute a transfer under the provisions of this License requiring an application for a new license agreement, unless Licensee receives Licensor's prior written consent for the transaction. Licensee may however, without Licensor's consent, mortgage or otherwise grant a security interest in the

real estate or other tangible assets of the Hotel (but specifically excluding this License or any right or interest herein) in connection with commercially reasonable financing for the Hotel with a third party bank or other commercial lending institution which is not a competitor of Licensor or any of its parents, subsidiaries or affiliated entities. The selling, offering for sale, or establishment or registration of any condominium, cooperative, flat, timeshare, fractional interest, or interval ownership or regime or any similar type of ownership or regime relating to all or any part of the Hotel is prohibited.

### J.    **Management and Name of the Hotel:**

Licensee must at all times retain and exercise direct management control over the Hotel's business. Licensee shall not enter into any lease, management agreement, or other similar arrangement for the operation of the Hotel or any part thereof (including without limitation, retail or food and/or beverage service facilities) with any natural person or Entity without the prior written consent of Licensor in each instance. The approval by Licensor of any such lease, management agreement or other similar arrangement for operation of the Hotel or any part thereof shall in no way relieve, reduce, mitigate or waive any of the responsibilities of Licensee under this License, it being understood that all such responsibilities shall at all times remain the obligation of Licensee. Licensee must provide Licensor with all information requested by Licensor from time to time regarding ownership, control and management of the Hotel and of Licensee.

Licensor has the exclusive right to name the Hotel. The name of the Hotel may not be changed unless Licensor determines, at its election, to do so.

### K.    **Employees of the Hotel:**

None of Licensee's employees will be considered to be Licensor's employees. Licensee acknowledges and agrees that Licensee, or its management company engaged to operate the Hotel, as may be applicable, is the sole employer of the employees working at the Hotel and that Licensor does not directly or indirectly control employment policies, discipline, recruitment or termination and that Licensee is solely responsible for all employment decisions, regardless of whether Licensee has received guidance with respect to such matters from Licensor. Neither Licensee nor any of Licensee's employees whose compensation Licensee pays may in any way, directly or indirectly, expressly or by implication, be construed to be Licensor's employee for any purpose, including but not limited to with respect to any mandated or other insurance coverage, tax or contributions, or requirements pertaining to withholdings, levied or fixed by any city, state or federal governmental agency. Licensor will not have the power to hire or fire Licensee's employees. Licensee expressly agrees, and will never contend otherwise, that Licensor's authority under this License to approve certain of Licensee's employees for qualification to perform certain functions for the Hotel does not directly or indirectly vest in Licensor the power to hire, fire or control any such employee. Licensee further agrees that any such minimum requirements established by Licensor are solely for the purpose of ensuring that the Hotel is at all times operated in accordance with the Standards and with the attributes of the Brand known to, and desired by, the consuming public and associated with the Marks. Moreover, Licensee agrees that any training provided by Licensor for Licensee's employees is intended to impart to those employees, under Licensee's ultimate authority, the various procedures, protocols, systems and operations of the Hotel and in no fashion reflects any employment relationship between Licensor and such employees. Finally, should it ever be asserted that Licensor is the employer, joint employer or co-employer of any of Licensee's employees in any private or government investigation, action, proceeding, arbitration or other setting, Licensee irrevocably agrees to assist Licensor in defending said allegation, including, if necessary, appearing at any venue requested by Licensor to testify on Licensor's behalf and, as may be necessary, submitting itself to depositions, other appearances and/or preparing affidavits dismissive of any allegation that Licensor is the employer, joint employer or co-employer of any of Licensee's employees.

### 11.    **CONDEMNATION AND CASUALTY:**

### A.    **Condemnation:**

Licensee shall, at the earliest possible time, give Licensor full notice of any proposed taking of all or any part of the Hotel by eminent domain. If Licensor acknowledges that the Hotel or a substantial part thereof is to be taken, Licensor will give due and prompt consideration, without any obligation, to changing the site of the Hotel to a nearby location selected by Licensee and approved by Licensor as promptly as reasonably possible and in any event within four months of the taking, provided that Licensee

has promptly filed an application to change the Location of the Hotel. Such application would not require payment to Licensor of any additional franchise application fee. If the condemnation of all or any material part of the Hotel building occurs in the last two years of the License Term, the License shall automatically terminate effective upon the date of the taking. If the new location and Licensee's application are approved by Licensor Licensee shall promptly execute an addendum to this License substituting the new location, and Licensee shall open a new hotel at the new location in accordance with Licensor's specifications within two years of the closing of the Hotel if the new hotel is a new development or within one year of the closing of the Hotel if the new hotel is a conversion of an existing building and the new hotel will thenceforth be deemed to be the Hotel licensed under this License. If a condemnation takes place and a new hotel is not, for whatever reason, approved by Licensor to become the Hotel under this License (or if it is reasonably evident to Licensor that such will be the case), the License will terminate forthwith upon notice thereof by Licensor to Licensee and Licensee shall have no liability for the liquidated damages set forth in paragraph 12.E. of this License.

**B.    Casualty:**

If the Hotel is damaged by fire or other casualty, Licensee will immediately notify Licensor and expeditiously repair the damage; provided, however, if all or virtually all of the Hotel is destroyed by such fire or other casualty, either Licensor or (unless caused by the intentional act of Licensee or its agent) Licensee may terminate this License by fifteen days prior notice to the other delivered within sixty days of the date of the fire or other casualty. If Licensee terminates this License in accordance with this provision, Licensee shall have no liability for the liquidated damages set forth in paragraph 12.E. of this License so long as neither Licensee nor any of its affiliates, principals, shareholders, members, partners or other owners, either directly or through another person or entity, develops, leases or operates the site as a hotel or other lodging or residential facility of any kind or sort for at least five years following the date of termination (or the originally scheduled termination date of this License, if earlier) other than pursuant to another license with Licensor.

Unless the License is terminated properly pursuant to the foregoing provision, Licensee will close the Hotel if required by the extent of the damage or if otherwise required by Licensor; will repair or rebuild the Hotel in accordance with Licensor's Standards; will commence reconstruction within three months after the fire or other casualty; will expeditiously continue on an uninterrupted basis with such reconstruction and will, if the Hotel was closed, reopen the Hotel for continuous business operations as soon as practicable (but in any event within eighteen months after the fire or other casualty), giving Licensor at least forty-five days advance notice of the date of reopening if the Hotel was closed. If the Hotel was closed, Licensee may not reopen the Hotel or promote or otherwise hold the Hotel out as a hotel in the System unless and until Licensor determines that the reconstruction is completed in accordance with Licensor's then current Standards. If the Hotel is not required to be closed, all work to repair damage shall be conducted so as to minimize interference with the Hotel's operation and guests. If the damage is not repaired in accordance with this paragraph, the License will forthwith terminate upon notice thereof by Licensor to Licensee and Licensee shall be responsible for full liquidated damages under paragraph 12.E. of this License. Notwithstanding anything else herein to the contrary, during the time the Hotel is closed, Licensee shall pay Licensor a monthly royalty of 2% of Gross Rooms Revenue based on the average monthly Gross Rooms Revenue for the preceding twelve months prior to the date of the fire or other casualty or if the Hotel has not been in the System for twelve months, based on the average monthly Gross Rooms Revenue for the period during which the Hotel has been in operation in the System. Said payment shall be in lieu of all other System Fees under paragraph 3.B. of this License.

**C.    No Extensions of Term:**

Nothing in this paragraph 11 will or is intended to extend the License Term.

**12.    TERMINATION:**

**A.    Expiration of Term:**

This License will expire without notice **fifteen (15) years from the Term Commencement Date**, subject to earlier termination as set forth herein. This License is not renewable, and Licensee acknowledges and agrees that this License confers upon Licensee absolutely no rights of license renewal following the expiration of the License Term. The parties recognize the difficulty of ascertaining damages to Licensor resulting from premature termination of the License, and have provided for liquidated damages

which represent their best estimate as to the damages arising from the circumstances in which they are provided.

**B.** **Termination by Licensor on Advance Notice:**

    (1)    In accordance with notice from Licensor to Licensee, this License will terminate (without any further notice unless required by law), provided that:

        (a)    the notice is mailed at least 30 days (or longer, if required by law) in advance of the termination date;

        (b)    the notice reasonably identifies one or more breaches of the Licensee's obligations;

        (c)    the breach(es) are not fully remedied within the time period specified in the notice.

    (2)    If Licensee shall have engaged in a violation of this License, for which a notice of termination was given and termination failed to take effect because the default was remedied during the then preceding 12 months, the period given to remedy defaults will, if and to the extent permitted by applicable law, thereafter be 10 days instead of 30 (provided, however, if there have been two or more violations of the License in the preceding twelve months for which notices of termination were given, upon the next violation, if and to the extent permitted by applicable law, the License may be terminated by Licensor immediately upon notice).

    (3)    In any judicial proceeding in which the validity of termination is at issue, Licensor will not be limited to the reasons set forth in any notice sent under this paragraph.

    (4)    Licensor's notice of termination or suspension of services shall not relieve Licensee of its obligations under this License.

**C.** **Immediate Termination by Licensor:**

This License may be terminated by Licensor immediately (or at the earliest time permitted by applicable law) if:

    (1)    (a)    Licensee or any guarantor of Licensee's obligations hereunder shall generally not pay its debts as they become due, or shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors;

        (b)    Licensee or any such guarantor shall commence any case, proceeding or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or any substantial part of its property;

        (c)    Licensee or any such guarantor shall take any corporate or other action to authorize any of the actions set forth in paragraphs (a) or (b) above; or

        (d)    any case, proceeding or other action against Licensee or any such guarantor shall be commenced seeking to have an order for relief entered against it as debtor, or seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or any substantial part of its property, and such case, proceeding or other action: (i) results in the entry of any order for relief against it which is not fully stayed within seven business days after the entry thereof, or (ii) remains undismissed for a period of 45 days;

        (e)    an attachment remains on all or a substantial part of the Hotel or of Licensee's or any such guarantor's assets for 30 days;

        (f)    Licensee or any such guarantor fails, within 60 days of the date of entry of a final judgment or tax lien against Licensee or a guarantor of this License in any amount exceeding $50,000, to discharge, vacate or reverse the judgment or tax lien, or, to stay execution of it, or if appealed, to discharge the judgment within 30 days after a final decision is rendered in the appeal;

(2)    Licensee voluntarily or involuntarily loses possession or the right to possession of all or a significant part of the Hotel, except as otherwise provided in paragraph 11;

(3)    Licensee, or any entity or individual having a direct or indirect ownership interest in it, contests in any court or proceeding Licensor's ownership of the System or any part of it, or the validity of any of the Marks, or other service marks or trademarks or other intellectual property associated with any of Licensor's businesses;

(4)    A breach of paragraph 9 or paragraph 10 occurs;

(5)    Licensee fails to continue to identify the Hotel to the public as a System hotel, engages in any action that violates Licensor's proprietary rights under paragraph 7 or ceases to operate the Hotel as a System hotel;

(6)    Any action is taken toward dissolving or liquidating Licensee or any guarantor hereunder, if it is an Entity, except for any such actions resulting from the death of a partner;

(7)    Licensee (or any principal stockholder, owner, member or partner of Licensee as the case may be) is, or is discovered to have been, convicted of a felony (or any other offense if it is likely to adversely reflect upon or affect the Hotel, the System or Licensor in any way);

(8)    Licensee maintains false books and records of account or submits false reports or information to Licensor; or

(9)    Licensee knowingly fails to comply with the requirements of the License and/or the Standards on safety, security, or privacy for its guests at the Hotel, or on the reputation of the management, employees or operation of the Hotel, and such failure may significantly adversely reflect upon or affect the Hotel, the System or Licensor, its parents, subsidiaries and/or affiliates in any way;

(10)    A breach of paragraph 14.M. occurs;

(11)    Licensee uses any of the Marks before being authorized to do so by Licensor; or

(12)    Licensee uses any of the Marks in any manner prohibited or not expressly authorized or permitted, by this License; or

(13)    Licensee refuses to allow, or to cooperate with, Licensor's inspection or audit of the Hotel following a reasonable attempt by Licensor to schedule during normal business hours.

**D.    De-Identification of Hotel Upon Termination:**

Licensee will take whatever action is necessary to assure that no use is made of any part of the System at or in connection with the Hotel after the License Term ends. This will involve, among other things, returning to Licensor the Standards and all other materials proprietary to Licensor, ceasing the use of any of Licensor's trademarks or service marks, physical changes of distinctive System features of the Hotel, including removal of the primary freestanding sign down to the structural steel, and all other actions required to preclude any possibility of confusion on the part of the public and to ensure that the Hotel is no longer using all or any part of the System or otherwise holding itself out to the public as a System hotel. Anything not done by Licensee in this regard within 30 days after termination may be done at Licensee's expense by Licensor or its agents who may enter upon the premises of the Hotel for that purpose.

**E.    Payment of Liquidated Damages:**

The parties recognize the difficulty of ascertaining damages to Licensor resulting from premature termination of this License, and have provided for liquidated damages, which liquidated damages represent the parties' best estimate as to the damages arising from the circumstances in which they are provided and which are only damages for the premature termination of this License, and not as a penalty or as damages for breaching this License or in lieu of any other payment. If the License is terminated pursuant to paragraphs 12.B. or 12.C. above, Licensee will promptly pay Licensor, as liquidated damages, a lump sum equal to the total amounts required under paragraphs 3.B.(1), (3) and (4) during the 36 calendar months of operation preceding the termination or such shorter period as equals the unexpired License Term at the time of termination; or if the Hotel has not been in operation in the System for 36 months, the greater of:

(1)    36 times the monthly average of such amounts for the period during which the Hotel has been in operation in the System, or

(2)    36 times such amounts as are due for the one month preceding such termination.

        LA 2018

Licensor and Licensee acknowledge and agree that it would be difficult to determine the injury caused to Licensor by termination of this License. Licensor and Licensee therefore intend  and agree the above liquidated damages calculation to be a reasonable estimate of Licensor's probable loss and not a penalty or in lieu of any other payment.

13.    **RELATIONSHIP OF PARTIES:**

      **A.**    **No Agency Relationship:**

Licensee is an independent contractor.  Neither party is the legal representative nor agent of, or has the power to obligate (or has the right to direct or supervise the daily affairs of) the other for any purpose whatsoever.  Licensor and Licensee expressly acknowledge that the relationship intended by them is a business relationship based entirely on and circumscribed by the express provisions of this License and that no partnership, joint venture, agency, fiduciary or employment relationship is intended or created by reason of this License.  Licensee acknowledges and agrees, and will never contend otherwise, that Licensee alone will exercise day-to-day control over all operations, activities and elements of Licensee and the Hotel and that under no circumstance shall Licensor do so or be deemed to do so. Licensee further acknowledges and agrees, and will never contend otherwise, that the various requirements, restrictions, prohibitions, specifications and procedures of the System which Licensee is required to comply with under this License, whether set forth in the Standards or otherwise, do not directly or indirectly constitute, suggest, infer or imply that Licensor controls any aspect or element of the day-to-day operations of Licensee or the Hotel, which Licensee alone controls, but only constitute standards Licensee must adhere to when exercising its control of the day-to-day operations of Licensee and the Hotel.

      **B.**    **Licensee's Notices to Public Concerning Independent Status:**

Licensee will take such steps as are necessary and such steps as Licensor may from time to time reasonably request to minimize the chance of a claim being made against Licensor for anything that occurs at the Hotel or for acts, omissions or obligations of Licensee or anyone associated or affiliated with Licensee or the Hotel.  Such steps may, for example, include giving notice in guest rooms, public rooms and advertisements and on business forms and stationery, etc., making clear to the public that Licensor is not the owner or operator of the Hotel and is not accountable for what happens at the Hotel.  Unless required by law, Licensee will not use Licensor's name, the Marks or any other trademarks, service marks or other intellectual property owned or licensed by Licensor or any of its affiliates, or any similar words in its corporate, partnership, entity or trade name, nor authorize or permit such use by anyone else.  Licensee will not use Licensor's name, the Marks or any other trademarks, service marks or other intellectual property owned or licensed by Licensor or any of its affiliates to incur any obligation or indebtedness on behalf of Licensor.

Licensee shall not register Licensor's name, the Marks or any other trademarks, service marks or other intellectual property owned or licensed by Licensor or any of its affiliates as part of any internet domain name or Uniform Resource Locator (URL), and may not display or use any of the Marks or other intellectual property rights related to the System in connection with any web site.  Licensee shall not promote, maintain, implement or be responsible for any web site in connection with the licensed Hotel without the prior written approval of Licensor, and if approved by Licensor, any such web site shall comply with all of Licensor's web site requirements as set forth in the Standards or otherwise.

14.    **MISCELLANEOUS:**

      **A.**    **Severability and Interpretation:**

The remedies provided in this License are not exclusive.  In the event any provision of this License is held to be unenforceable, void or voidable as being contrary to the law or public policy of the United States or any other jurisdiction entitled to exercise authority hereunder, all remaining provisions shall nevertheless continue in full force and effect, unless deletion of the provision(s) is deemed unenforceable, void or voidable impairs the consideration for this License in a manner which frustrates the purpose of the parties or makes performance commercially impracticable.  In the event any provision of this License requires interpretation, such interpretation shall be based on the reasonable intention of the parties in the context of this transaction without interpreting any provision in favor of, or against, any party hereto by reason of the draftsmanship of the party or its position relative to the other party.

LA 2018

**B.**   **Binding Effect, Choice of Law, No Jury Trials, No Punitive Damages and Licensor's Right to Injunctive Relief:**

(1)   This License shall become valid when executed and accepted by Licensor in Atlanta, Georgia. It shall be deemed made and entered into in the State of Georgia. This License, all relations between the parties and, any and all disputes between the parties, whether sounding in contract, tort or otherwise, shall be governed and construed under, and in accordance with, the laws and decisions (except any conflicts of law provisions) of the State of Georgia. In entering into this License, Licensee acknowledges that it has sought, voluntarily accepted and become associated with Licensor who is headquartered in Atlanta, Georgia. Licensee hereby expressly and irrevocably submits itself to the non-exclusive jurisdiction of the U.S. District Court for the Northern District of Georgia, Atlanta Division and the State and Superior Courts of DeKalb County, Georgia for the purpose of any and all disputes. However, Licensor remains entitled to seek injunctive relief in the federal or state courts either of Georgia or of the state of the Hotel's Location or of Licensor's principal place of business.  Should Licensee initiate litigation against Licensor, its parents, subsidiaries or one of its affiliated entities, Licensee must bring such action in the courts identified above; provided, however, the foregoing will not constitute a waiver of any of Licensee's rights under any applicable franchise law of the state in which the Hotel is located.

(2)   To the extent either Licensor or Licensee initiates litigation relating to this License or any matter relating to their relationship, Licensor and Licensee irrevocably and unconditionally waive their rights to a trial by jury. This waiver will apply to all causes of action that are or might be included in such action, including claims related to the enforcement or interpretation of this License, allegations of state or federal statutory violations, fraud, misrepresentation, or similar causes of action, and in connection with any legal action initiated for the recovery of damages by either of us.

(3)   Licensor and Licensee hereby irrevocably and unconditionally waive, to the fullest extent permitted by law, any right to or claim for any punitive, exemplary, incidental, indirect, special, consequential or other similar damages in any litigation, action, claim, suit, arbitration, mediation or proceeding, at law or equity, arising out of, pertaining to or in any way associated with this License, or any other documents entered into in connection with this License, and the parties covenant never to advance or pursue any such claim for punitive damages and agree that, in the event of a dispute, only actual damages shall be sought as relief to the exclusion of all others.

(4)   Licensee explicitly affirms and recognizes the unique value and secondary meaning attached to the System and the Marks. Accordingly, Licensee agrees that any noncompliance by it with the terms of this License, or any unauthorized or improper use of the System or the Marks by Licensee, will cause irreparable damage to Licensor. Licensee therefore agrees that if Licensee engages in this non-compliance, or unauthorized and/or improper use of the System or Marks, during or after the period of this License, Licensor will be entitled to both temporary and permanent injunctive relief against Licensee from any court of competent jurisdiction, in addition to all other remedies which Licensor may have at law. Licensee consents to the entry of these temporary and permanent injunctions, without Licensor being required to prove the inadequacy of money damages as a remedy, without being required to post a bond and without waiving any other rights or remedies at law or in equity.

**C.**   **Exclusive Benefit:**

This License is exclusively for the benefit of the parties hereto, and it may not give rise to liability to a third party.  No agreement between Licensor and anyone else is for the benefit of Licensee.

LA 2018

**D.     Entire Agreement:**

This is the entire agreement between the parties pertaining to the licensing of the Hotel and supersedes all previous negotiations and agreements between the parties pertaining to the licensing of the Hotel as a System hotel. Nothing in the preceding sentence is intended, however, to disclaim any representations Licensor made in the franchise disclosure document that Licensor provided to Licensee. No change in this License will be valid unless in writing signed by both parties. No failure to require strict performance or to exercise any right or remedy hereunder will preclude requiring strict performance or exercising any right or remedy in the future.

**E.     Licensor Withholding Consent:**

(1)     In no event may Licensee make any claim for money damages based on any claim or assertion that Licensor has unreasonably withheld, delayed and/or denied any consent or approval under this License. Licensee waives any such claim for damages. Licensee may not claim any such damages by way of setoff, counterclaim or defense. Licensee's sole remedy for such a claim will be an action or proceeding to enforce the subject License provision(s) for specific performance or for declaratory judgment.

(2)     Licensor's consent, whenever required, may be withheld if any breach by Licensee exists under this License. Approvals and consents by Licensor will not be effective unless evidenced by a writing duly executed on behalf of Licensor.

**F.     Notices:**

Notices will be effective hereunder when and only when they are in writing and delivered personally or mailed by Federal Express or comparable overnight or express delivery service or by certified mail to the appropriate party at its address, hereinafter set forth, or to such person and at such address as may subsequently be designated by one party to the other.

Licensor:     Holiday Hospitality Franchising, LLC
Three Ravinia Drive, Suite 100
Atlanta, Georgia 30346
Attn:  Vice President, Franchise Licensing and Compliance

Licensee:     110 Sunport, L.L.C.
c/o: Tushar Patel
4520 Lower Terrace Circle NE, Suite A
Albuquerque, NM 87111

**G.     Authority:**

Licensee represents and warrants to Licensor that the entities and persons signing this License on behalf of Licensee are duly authorized to do so and to bind Licensee to enter into and perform this License. Licensee further represents and warrants to Licensor that Licensee and the entities and persons signing this License on behalf of Licensee have obtained all necessary approvals and that their execution, delivery and performance of this License will not violate, create a default under or breach any charter, bylaws, agreement or other contract, license, permit, order or decree to which they are a party or to which they are subject or to which the Hotel is subject.  If Licensee has not already done so prior to the execution of this License, Licensee agrees to submit to Licensor by the date specified by Licensor all of the documents and information that Licensor required or requested in the license application and in connection with the licensing process.  Licensee acknowledges that its breach of the representations and warranties in this paragraph, its failure to comply with Licensor's requirements for the submission of information and documents, or any omission or misrepresentation of any material fact in the information or documents submitted to Licensor in connection with the license application and/or the licensing process will constitute a material breach of Licensee's obligations under this License.

**H.     General Release and Covenant Not to Sue:**

Licensee and its respective heirs, representatives, successors and assigns, hereby release, remise and forever discharge Licensor and its parents, subsidiaries and affiliates and their

22                                                                                      LA 2018

directors, employees, agents, successors and assigns from any and all claims, whether known or unknown, of any kind or nature, absolute or contingent, if any there be, at law or in equity, from the beginning of time to and including, the date of Licensor's execution of this License, and Licensee and its respective heirs, representatives, successors and assigns do hereby covenant and agree that they will not institute any suit or action at law or otherwise against Licensor, directly or indirectly relating to any claim released hereby by Licensee; provided, however, that nothing contained in this release is intended to disclaim or require Licensee to waive reliance on any representation that Licensor made in the Franchise Disclosure Document that it provided to Licensee. This release and covenant not to sue shall survive the termination of this License. Licensee shall take whatever steps are necessary or appropriate to carry out the terms of this release and covenant not to sue upon Licensor's request.

**I.      Performance of the Work:**

Licensee agrees to perform the construction, upgrading and renovation work including, without limitation, the purchase of furniture, fixtures and equipment set forth on Attachment "B" attached hereto and incorporated herein by reference ("the Work"). Licensee acknowledges that its agreement to perform the Work is an essential element of the consideration relied upon by Licensor in entering into the License and agrees that, Licensee may be authorized, in Licensor's sole judgment, to use the System at the Hotel prior to completion of the Work, but only during such time as Licensee is actively meeting its performance obligations in full compliance with the requirements of Attachment "B" of this License. Licensee shall not commence its operation of the System, or any part thereof, at the Hotel unless and until it receives Licensor's written authorization to do so. Licensee's failure to perform the Work in accordance with Licensor's requirements and specifications (including the progress, milestone, completion and other dates specified in Attachment "B" of this License) shall constitute a material breach of Licensee's obligations under this License.

**J.      Reimbursement of Expenses:**

Licensee agrees to pay Licensor all expenses, including reasonable attorneys' fees and court costs, incurred by Licensor, its parents, subsidiaries, affiliates, and their successors and assigns, to remedy any defaults of or enforce or defend itself or any rights under this License **(including any claim, cross claim or counter-claim brought by Licensee, except to the extent that Licensee is the prevailing party under such claim)**, effect termination of this License or collect any amounts due under this License.

**K.      Descriptive Headings:**

The descriptive headings in this License are for convenience only and shall not control or affect the meaning or construction of any provision in this License.

**L.      Capital Reserve; Capital Reinvestment and Renovation Cycles:**

(1)      Licensor may require Licensee to establish a capital reserve in an amount not in excess of 5% of Gross Revenue annually to be used for capital expenditures and upgrading of the Hotel including renovation of guest rooms, guest room corridors and other public spaces and replacement of furniture, fixtures and equipment ("Capital Reserve"). Licensor shall give Licensee no less than ninety (90) days notice of imposing such requirement to establish a Capital Reserve as the same may be established or changed by Licensor from time to time, and in such event, Licensee must establish an escrow reserve account funded monthly in a bank selected by Licensee. Licensee shall make expenditures from such account for the purposes hereinbefore specified in accordance with Licensor's requirements. Licensee acknowledges that the Capital Reserve may not be sufficient to maintain the Hotel as a first class facility in accordance with Licensor's Standards and Licensee shall promptly provide any necessary additional funds to meet Licensor's product quality and consumer quality requirements, as well as Licensee's renovation obligations specified herein.

(2)      Throughout the License Term, regardless of whether Licensor has required Licensee to establish a Capital Reserve, Licensee must complete significant renovations of the guestrooms, guest room corridors and public spaces of the Hotel in order to maintain the Hotel as a first class facility, including: (a) replacing

23                                                                                LA 2018

Soft Goods at least every five (5) to six (6) years after such Soft Goods were installed and (b) replacing Case Goods at least every (10) to twelve (12) years after the date such Case Goods were installed; and, if necessary replacing such Soft Goods and Case Goods more frequently in order to maintain compliance with the Standards, Licensor's quality and guest satisfaction programs or to remove risk of injury to persons or property or to ensure compliance with all applicable laws.

(3)    Licensee must fund all ordinary and extraordinary maintenance and repair, capital improvements and renovations of the Hotel.

(4)    For purposes of this paragraph 14.L. the following definitions apply:

    (a)    "**Gross Revenue**" means all revenues and income of any nature derived directly or indirectly from the Hotel or from the use or operation thereof, including without limitation room sales; food and beverage sales; telephone, telegraph, fax and internet revenues; rental or other payments from lessees, subleases, concessionaires and others occupying or using space or rendering services at the Hotel (but not the gross receipts of such lessees, subleases or concessionaires); interest on any existing amounts held in the Capital Reserve; and the actual cash proceeds of business interruption, use, occupancy or similar insurance.

    (b)    "**Soft Goods**" means textile, fabric and vinyl and similar products used in finishing and decorating the Hotel, its guest rooms, guest room corridors and public spaces, such as vinyl wall and floor coverings, drapes, sheers, cornice coverings, carpeting, bedspreads, lamps, lamp shades, artwork, task chairs, upholstery and all other unspecified items of the same class.

    (c)    "**Case Goods**" means furniture and fixtures used in the Hotel, its guest rooms, guest room corridors and its public spaces such as chests, armoires, chairs, beds, headboards, desks, tables, television sets, mirrors, pictures, wall decoration, graphics and all other unspecified items of the same class.

    (d)    "**FF&E**" means furniture, fixtures, equipment, signage, including exterior signage, as well as other improvements and personal property used in the operation of the Hotel except for those supplies and equipment which are 'OS&E' under the then current version of the Uniform System of Accounts for the Lodging Industry.

(5)    Licensee shall inform Licensor of the dates of installation of Soft Goods and Case Goods, which dates Licensor shall be entitled to verify.

(6)    Licensee must submit its renovation plans for the Hotel to Licensor for Licensor's review and approval prior to starting any renovations and Licensee shall not start any renovations until Licensor has approved the scope of the plans and the plans' compliance with the Standards.

(7)    Licensor shall have the right to require Licensee to make renovations to the Hotel to conform the Hotel's FF&E, décor, building trade dress and improvements to then-current Standards and Holiday Inn Express brand design criteria.

**M.    <u>Anti-Terrorism, Anti-Bribery and Trade Sanctions Compliance</u>:**

(1)    Licensee represents, warrants and covenants that neither it nor any entity or individual having a direct or indirect ownership interest in it, any guarantor of Licensee's obligations under this License ("**Guarantor**") nor any of Licensee's affiliates nor any officer, director, employee, member, partner or shareholder of any of the foregoing, has been or is now:

    (a)    directly or indirectly owned or controlled by the government of any nation subject to trade sanctions or embargoes imposed by any of the Sanctioning Bodies (as defined below in sub-paragraph (4));

    (b)    acting on behalf of any government of any nation subject to the trade sanctions or embargoes imposed by any of the Sanctioning Bodies,

    (c)    identified by any of the Sanctioning Bodies as a Prohibited Person; or,

    (d)    in violation of any applicable law relating to anti-money laundering, anti-terrorism, anti-bribery, trade sanctions or embargoes, including without limitation, the UK Bribery Act 2010, the US Foreign Corrupt Practices Act, the US Providing Appropriate Tools Required to Intercept and Obstruct

Terrorism Act of 2001 (US Patriot Act) and related regulations and executive orders related to the foregoing laws (the **"Relevant Laws"**).

(2)     Licensee further warrants and represents and covenants that Licensee, any Guarantor and any Person having a direct or indirect ownership in Licensee:

    (a)     will comply with the Relevant Laws; and

    (b)     that all individuals authorized to represent Licensee in carrying out its obligations under this License are eligible under applicable United States immigration laws to travel to the United States for training or any other purpose in carrying out Licensee's obligations under this License.

(3)     For the purposes of this paragraph 14.M., **"Person"** means any individual, corporation, partnership, joint venture, limited liability company, estate, trust, unincorporated association, any national, provincial, state, county or municipal government or any bureau, office, department or agency thereof and any fiduciary acting in an agency capacity on behalf of any of the foregoing.

(4)     **"Prohibited Person"** means any person identifed by Her Majesty's Treasury of the United Kingdom (**"UK"**), the Office of Foreign Assets Control of the Department of the Treasury of the United States (**"US"**), the European Union (**"EU"**) or the United Nations (**"UN"**), (collectively, **"Sanctioning Bodies"**) or any other Person with whom Licensor, or any of its affiliated companies, is otherwise prohibited from transacting business.

## N.     Business Judgment:

Licensor and Licensee recognize and agree, and any mediator or judge is affirmatively advised, that certain provisions of this License describe the right of Licensor to take (or refrain from taking) certain actions in the exercise of its business judgment as to the long-term overall interests of the System, and/or upon Licensor's determination that the change was adopted in good faith and is consistent with the long-term overall interests of the System. Where such judgment has been exercised by Licensor, neither a mediator, nor a judge, nor any trier of fact, shall substitute his, her or their judgment for the judgment so exercised by Licensor.

## 15.     BRAND PROVISIONS:

The License will include additional provisions based on the brand of hotel being licensed and based on whether the hotel is a new development, has operated under a different name (often called a "conversion" hotel) or is in Holiday's System and is being re-licensed by the current licensee or licensed by a new owner. These additional provisions will be included in Section 15 of the License and are described below.

## A.     Holiday Inn Express Brand Group Relicensing Provisions:

(1)     This License constitutes a license to operate a hotel as Holiday Inn Express® & Suites brand hotel.

(2)     The percentage of Gross Rooms Revenue that Licensee will pay to Licensor as the Services Contribution, as referenced in paragraph 3 above, is 3%.

    (a)     Licensee acknowledges that the Holiday Inn Express or Holiday Inn Express & Suites brand licensed herein, as presently constituted, includes service marks, marketing activities and merchandising practices which are designed to emphasize a "price/value" orientation to the consuming public as an essential feature of the brand. Licensee agrees, to the fullest extent permitted by applicable law, that it will utilize the rights licensed hereunder in a manner which conforms to that orientation, and Licensee acknowledges that Licensor may exercise all rights regarding such matters as may at anytime be permitted under applicable law. Licensor and Licensee agree that a determination as to whether operations are consistent with the price/value orientation will be based on reports of consumer reaction and perception received by Licensor and, in the event such reports reflect operations which are not consistent with a price/value orientation, Licensee will take appropriate steps to respond to such consumer reaction.

(b)     Licensee will participate in all specific Holiday Inn Express or Holiday Inn Express & Suites marketing programs and in all Holiday Inn marketing programs appropriate to Holiday Inn Express or Holiday Inn Express & Suites as designated by Licensor, subject in all cases to applicable law. The Services Contribution paid by Licensee will be available for all Holiday Inn and Holiday Inn Express or Holiday Inn Express & Suites marketing programs, including those programs which may be subject to Licensee participation.

(3)     If the Hotel sells alcoholic beverages through the sundry shop, or otherwise serves or provides alcoholic beverages, Licensee must maintain full liquor liability insurance with single limit coverage for personal and bodily injury and property damage of at least $15,000,000 per occurrence naming Licensor and its parents, subsidiaries and affiliates, (and Licensee if applicable) as additional insureds. Host liquor liability insurance coverage does not meet this requirement.

## 16.   SPECIAL STIPULATIONS:

### A.   General Manager Requirement:

Licensee shall cause the Hotel to be managed at all times by a general manager who has at least two years' experience as a general manager at either (i) a hotel operated under any of Licensor's other brands or (ii) a hotel in a similar brand segment as the Hotel, as defined by Smith Travel Research, Inc.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the parties have executed this License, as of the date first stated above.

**Licensee:**

**110 SUNPORT, L.L.C.**

By: _____
Tushar Patel
Managing Member

Witness: _____

**Licensor:**

**HOLIDAY HOSPITALITY FRANCHISING, LLC**

By:      **Six Continents Hotels, Inc.,**
         **its sole managing member**

By: _____
Jenny Tidwell
Vice President
Franchise Licensing and Compliance

Attest: _____
Assistant Secretary

27                                                    LA 2018

## ATTACHMENT "A"

Facilities and Services (paragraph 1):

| | |
|---|---|
| Site-Area and general description: | 4 story, interior corridor |
| Fee owners (names and addresses): | 110 Sunport, L.L.C.<br>1520 Tramway Boulevard NE, Suite 200<br>Albuquerque, NM 87112 |
| Separate parcels for signs: | N/A |
| Number of approved guest rooms (including suites): | 100 |
| Number of approved suites: | 24 |
| Restaurants and lounges: | N/A |
| Gift shop: | N/A |
| Other concessions and shops: | N/A |
| Parking facilities (number of spaces, description): | 120 |
| Swimming pool: | Indoor |
| Other facilities and services: | Meeting space (967 SF), Business center,<br>Fitness center, Guest laundry |

Ownership of Licensee (paragraph 10):

**110 SUNPORT, L.L.C.**                                                                                 **100%**
    Tushar Patel, member                                                     15%
    Jayesh Patel, member                                                 15%

| 110 SUNPORT, L.L.C. | | **100%** |
|---|---|---|
|   Tushar Patel, member | | 15% |
|   Jayesh Patel, member | | 15% |
|   Rahim Gillani, member | | 5% |
|   Hansa L.L.C., member | | 10% |
|     Anant Patel, member | 33.33% | |
|     Nirav Patel, member | 33.33% | |
|     Hasu Patel, member | 33.33% | |
|   Sarju Patel, member | | 5% |
|   Pranav J. Patel, member | | 5% |
|   Gilbert Blea, member | | 5% |
|   Piyush Patel, member | | 16.25% |
|   Ramanlal and Shakuntala Bhavan Trust, member | | 10% |
|   Tajdin Gillani, member | | 13.75% |

LA 2018

**ATTACHMENT "B"**

# Property Improvement Plan

Proposed License Renewal of the

Holiday Inn Express and Suites Albuquerque Airport

Albuquerque, New Mexico

Date of Issue: December 05, 2018



      
      

# I. HOTEL INFORMATION

| Property Name: | Holiday Inn Express and Suites Albuquerque Airport | | | PIP Visit Date: | 12/15/2016 |
|---|---|---|---|---|---|
| Address: | 1921 Yale Boulevard SE | | | Location #: | 10006 |
| City,ST: | Albuquerque, New Mexico 87106 | | | Project #: | 42928 |
| Applicant Name: | Tushar Patel | Office: | 1505275-8223 | InnCode: | ABQYI |
| Company: | TNJ Group | Cell: | 1 505 275-8223 | Proposed Action: | License Renewal |
| Address: | 5345 Wyoming Blvd NE,Suite 204 | Email: | tushar@tnjgroup.com | | |
| City, ST: | Albuquerque, NM 87109 | | | | |

| BUILDING | | | GUEST ROOM AREA | Type | Qty. |
|---|---|---|---|---|---|
| Year Built: 2009 | # of Rooms: 100 | | | King | 41 |
| Addition: | # of Rooms: | | | Queen Queen | 28 |
| Highest Story: 4 | # of Guest Floor: 4 | | | 1 Bedroom Suite | 14 |
| Exterior Materials: Accent Stone / E.I.F.S. | | | | 2 Bedroom Suite | 8 |
| Guest Corridor Type: Interior | | | | ADA | 7 |
| # of Parking Spaces: 120 | | Type: Surface | | ADA Suites | 2 |
| # of Guest Elevators: 2 | # of Service Elevators: 0 | | | **Total Rooms:** | 100 |
| Internet: Wireless/Wired | Public Areas | | | | |
| Wireless/Wired | Guest Areas | | | | |
| HVAC: Split System | Public Areas | | | | |
| PTAC | Guest Areas | | | | |
| Employee Restroom: ☑ | | | | | |
| Employee Breakroom: ☑ | | | | | |

PROPRIETARY & CONFIDENTIAL E

| LIFE SAFETY | | | GREATROOM | | Seats |
|---|---|---|---|---|---|
| Emergency Generator: | ☐ | | Breakfast Area: | ☑ | 55 |
| Hardwire Smoke Detectors: | ☑ | Commercial Areas | | | |
| | ☑ | Guest Corridor | | | |
| | ☑ | Guest Rooms | | | |
| Sprinkler System: | ☑ | Commercial Areas | | | |
| | ☑ | Guest Corridor | | | |
| | ☑ | Guest Rooms | | | |

| GUEST AMENITIES | | | | MEETING SPACE | Name | SF |
|---|---|---|---|---|---|---|
| Indoor Pool: | ☑ | Max Depth (ft.): | 5 | | Board Room | 323 |
| | | | | | Conference Room | 644 |
| Outdoor Pool: | ☐ | Max Depth (ft.): | 0 | | | |
| Whirlpool: | ☑ | Max Depth (ft.): | 3 | | Total Meeting Space (SF): | 967 |
| Fitness Room: | ☑ | Square Ft: | 273 | | | |
| Business Center: | ☑ | | | | | |
| Sets of Public Restrooms: | 2 | Unisex: | 0 | | | |
| Guest Laundry: | ☑ | | | | | |
| # of Vending Areas: | 3 | | | | | |
| Other Amenities: | | | | | | |

## IHG CONTACTS

| PIP Regional Manager: | Gene Dwyer<br>Regional Manager, Property Improvements | Phone:<br>Email: | 630-453-4734<br>gene.dwyer@ihg.com |
|---|---|---|---|
| Plan Review Regional Manager: | Nikki Boudreaux<br>Regional Manager, Plan Review | Phone:<br>Email: | (770) 604-8239<br>nikki.boudreaux@ihg.com |

PROPRIETARY & CONFIDENTIAL E

## UNDERSTANDING THE PIP & RESOURCES

All architectural and design drawings, construction documents, color boards and materials specifications related to this Property Improvement Plan (PIP) must be submitted to IHG's Architecture & Design Studio for review and approval prior to making any commitment to purchase materials or commencing any work. IHG reserves the right to require the owner to replace or modify any materials or work not formally submitted to and approved by IHG's Architecture & Design Studio.

All work is to be performed in accordance with the Holiday Inn Express and Suites Brand Standards, and all FF&E is required to meet Holiday Inn Express and Suites Brand Standards.

**Resources:**

Please refer to IHG's Architecture & Design Studio website www.ihgdesignconnect.com for various resources required for the successful implementation of your PIP.

Questions regarding this PIP and other design and construction issues can be answered by contacting the IHG PIP Consultant or Plan Review Regional Manager.

The findings in this PIP will not be effective six months after the date of this PIP unless a license agreement is executed within that time period, unless extended in writing by IHG.

## COMPLETION OF THE PIP

The following are the due dates for completion of each component of the PIP, unless specified elsewhere in the PIP.

**Design Milestones:**

| | |
|---|---|
| Submission of Plans................................................ | 6/30/2019 |
| Submission of Furniture, Fixtures & Equipment..... | 6/30/2019 |

**Renovation Completion Milestones:**

| | |
|---|---|
| Exterior Areas............................................................ | 2/29/2020 |
| Public Areas............................................................... | 2/29/2020 |
| Recreational Areas..................................................... | 2/29/2020 |
| Heart of House Areas................................................ | 2/29/2020 |
| Guest Room Areas..................................................... | 11/30/2019 |

After this PIP is completed, the owner shall continue to maintain the hotel as a first-class facility, including replacing soft goods and case goods in all areas of the hotel including, but not limited to, the guest rooms, corridors, and public areas on the timelines outlined in the license agreement or more frequently to maintain compliance with brand standards.

All requests for extensions of due dates must be submitted in writing to IHG, addressed to the appropriate PIP Regional Manager and must be specifically approved in writing by IHG. As a condition to approving an extension of a due date, IHG may require that the PIP be modified to include upgrading or renovation of additional areas or items (in addition to any charges that might be due).

IHG will conduct field-inspections at the hotel on or about the Renovation Milestone dates at no charge to the owner. Should the above Renovation Milestone dates not be met, thereby requiring additional inspections, IHG may charge the owner up to $5,000.00 for each additional inspection (in addition to any other charges that might otherwise be due)."

PROPRIETARY & CONFIDENTIAL E

## Formula Blue

Formula Blue is the basis for all requirements noted throughout this PIP.This includes finishes, FF&E and decor as well as reconfiguration of public and guest areas to accommodate the key components of Formula Blue such as the check-in pods and adjacent market, lobby and great room, enclosed breakfast serving area and the guest room entrance vestibule. Please refer to the Formula Blue Renovation Design Guide to learn more about opportunities to customize Formula Blue at your hotel.

PROPRIETARY & CONFIDENTIAL

# I.) EXTERIOR AREAS

## A. Overall Area

1. Provide trash receptacles at all auxiliary entrance doors.

## B. Site

1. Re-paint dumpster enclosures to match new building color.
2. Repair, reseal, and re-stripe parking lot.
3. Refinish all handrails and guardrails.
4. Refinish steel culvert plates at sidewalks.
5. Repair and refinish damaged sections of concrete sidewalks, steps, curbing, and retaining walls.

## C. Landscaping

1. Prune and weed landscaping.
2. Provide landscaping and/or screening to conceal all site-mounted utilities.

## D. Porte Cochere

1. Provide a new multi-color paint scheme.
2. Refinish drive surface below the porte cochere.
3. Provide a recessed light in the ceiling of the lower canopy.
4. Provide a solid ceiling on the lower canopy and replace all fascia to coordinate with the new ceiling finishes.

## E. Building

1. Repair damaged E.I.F.S and provide a new multi-color paint scheme.
2. Replace damaged window screens.
3. Professionally clean PTAC grills.
4. Replace yellowed light fixtures and safety devices.
5. Replace damaged exhaust vents adjacent to main entrance.
6. Replace damaged hallmark graphics at auxiliary entrance doors.
7. Repair damaged accent stone and powerwash all accent stone.

PROPRIETARY & CONFIDENTIAL

## II.) PUBLIC AREAS

### A. Overall Area

1. Remove all chair rail, paneling, crown molding, and other trim.
2. Replace all deep textured ceiling finishes with a smooth painted finish.
3. Replace all electrical switches, outlets, and cover plates to coordinate with new finishes.
4. Refinish all doors and frames. Paint frames per brand specified paint color.

### B. Entrance Vestibule

1. Replace wall base.
2. Replace tile flooring.
3. Replace wall finish.
4. Re-paint ceiling.
5. Replace window treatment at luggage storage.
6. Remove brochure rack.

### C. Lobby

1. Remove all walls and water features between the Lobby and Great Room to provide one continuous dynamic space.
2. Replace wall base.
3. Replace all floor finishes with a mixture of tile and inset carpet.
4. Replace all wall finishes and introduce accent finishes including veneers and graphics.
5. Provide decorative column cladding at columns exposed from demolition.
6. Provide the brand specified lobby wall graphic near the elevator lobby.
7. Modify existing ceiling by providing applied or suspended wood ceiling accent features.
8. Replace light fixtures to coordinate with new ceiling features.
9. Replace artwork with brand specified artwork in the perching area.
10. Relocate ATM machine to new Market.
11. Replace all furnishings and décor.

### D. Front Desk Area

1. Provide doors behind the front desk to conceal the back of house.
2. Replace flooring and wall base behind front desk.
3. Replace back wall finishes with a feature back wall finish.
4. Replace the existing Branded back wall sign with the new signature back wall element and new Branded back wall sign. Also provide track light fixtures at the back wall.
5. Repair and paint ceiling.
6. Replace the front desk with free-standing check-in pods or approved alternate open concept.

### E. Market

1. Provide a market adjacent to the front desk area. The market must be compliant with Holiday Inn Express brand standards to participate in optional beer and wine sales program. Refer to brand standards for all program details.
2. Provide new floor finishes consistent with the lobby.
3. Provide new wall finishes consistent with the lobby.
4. Provide smooth or light texture ceiling finish.
5. Provide new recessed lighting consistent with lobby.
6. Provide architecturally designed and detailed millwork shelving for inventory display.
7. Provide one full size commercial grade refrigerator and one half-size commercial grade freezer with glass doors.

## F. Business Center

1. Re-purpose the existing business center. Provide an alternate use and provide all finishes and FF&E or enclose and convert it into a back-of-house space.
2. Provide a dedicated business center space that is integrated into the lobby and great room design. Provide a free-standing computer table and chairs to accommodate at least 2 computer stations and one printer.
3. Provide wall base.
4. Provide floor finishes consistent with lobby flooring.
5. Provide wall finishes consistent with the lobby.
6. Provide artwork.

## G. Great Room

1. Replace wall base.
2. Replace all floor finishes consistent with the lobby.
3. Replace column finishes and provide decorative column cladding.
4. Replace all wall finishes and introduce accents including veneers and graphics consistent with the lobby.
5. Modify existing ceiling by providing applied wood ceiling accent features.
6. Replace light fixtures to coordinate with new ceiling features.
7. Provide a television feature wall or approved alternate design.
8. Replace all dining tables with new dining table package to include 2-top 4-top and bar height.
9. Provide a counter height communal table(s) with integrated power/data anchored to a column or outside wall to conceal the electrical run.
10. Replace all seating with the new seating package including 2-top 4-top bar height and banquette seating.
11. Replace window treatments.
12. Replace artwork.
13. Replace the television with a 47in minimum flat panel television in great the room seating area. (Upon replacement of existing TV unit).
14. Replace decor package.

## H. Breakfast Bar

1. Provide enclosed breakfast bar space with garage barn or pocket doors to separate serving area from seating area.
2. Provide wall base.
3. Provide tile flooring.
4. Replace wall finish.
5. Repair and paint ceiling.
6. Replace the coffee station. Provide a 24/7 coffee bar and pegboard feature outside of the breakfast bar enclosure. Minimum size 30in D x 34in H x 6ft L.
7. Replace all breakfast buffet cabinetry and countertops. Minimum size: 30in D x 34in H x 24ft L. Install Express Start breakfast components.
8. Replace existing trash containers with new trash console(s) outside the breakfast bar enclosure.
9. Replace window treatments.

PROPRIETARY & CONFIDENTIAL E

## I. Public Restrooms - Single

1. Replace tile flooring.
2. Replace wall finish.
3. Replace tile wainscot at plumbing walls 48in high minimum.
4. Repair and paint ceiling.
5. Replace vanity lighting.
6. Replace vanities, sinks, and faucets.
7. Replace vanity mirror.
8. Replace wall mounted, branded or industrial style soap dispensers with integrated soap dispensers.

## J. Meeting Room

1. Replace flooring and wall base.
2. Replace wall finish.
3. Replace ceiling tiles with 2ft x 2ft tegular edge acoustic ceiling tiles.
4. Replace entry doors with solid core entry doors to provide 100% blackout. Provide a reverse door viewer.
5. Provide decorative ceiling mounted lighting.
6. Replace countertop with a new white quartz countertop.
7. Existing cabinetry can remain. Refinish and provide new hardware.
8. Replace banquet tables.
9. Replace banquet chairs.
10. Replace window treatments.
11. Provide artwork.
12. Wall mount house phone at 48in A.F.F. Conceal wiring from view of guests.

## K. Board Room

1. Replace wall base.
2. Replace tile flooring.
3. Replace wall finish.
4. Repair and paint ceiling.
5. Replace entry door with a solid core entry door to provide 100% blackout. Provide a reverse door viewer.
6. Replace lighting controls with dimmable controls.
7. Replace countertop with a new white quartz countertop.
8. Existing cabinetry can remain. Refinish and provide new hardware. If a sink is to remain, it must be undermount with lever style hardware.
9. Repair and refinish board room table.
10. Replace damaged board room chairs.
11. Replace window treatments.
12. Replace artwork.

PROPRIETARY & CONFIDENTIAL E

# III.) RECREATIONAL AREAS

## A. Fitness Center

1. Replace wall base.
2. Replace flooring.
3. Provide cord covers over exposed cords.
4. Replace wall finishes and provide accent wall.
5. Repair and paint ceiling.
6. Replace damaged entry door.
7. Replace towel storage and hamper.
8. Replace window treatments.
9. Replace fitness equipment with new cardio and strength equipment sourced from the IHG contracted vendors.

## B. Pool Area: Indoor

1. Refinish pool deck.
2. Refinish pool finish.
3. Professionally clean tile wainscot.
4. Replace wall finish above tile wainscot.
5. Repair and paint ceiling.
6. Replace corroded door hardware including levers, hinges, closers, panic push bars, door stops, and strikes.
7. Replace pool deck furniture.
8. Replace towel storage and hamper.
9. Repair or replace ventilation/dehumidifier for pool area.
10. Repair or replace HVAC grills.
11. Replace existing trash cans with commercial grade corrosion resistant cans.

## C. Whirlpool

1. Repair/refinish whirlpool finish.

## IV.) HEART OF HOUSE AREAS

### A. Overall Area

1.   Replace window treatments in all areas.
2.   Refinish all doors and frames. Paint frames per brand specified paint color.

### B. Mechanical Room

1.   Repair flooring.

### C. Pantry

1.   Replace wall finish with a washable wall finish.
2.   Re-paint ceiling.
3.   Provide a commercial dishwasher.

### D. Employee Restroom

1.   Replace toilet seats with open-front seats with no lids.
2.   Repair or replace vanity sink and faucet.
3.   Provide required signage.
4.   Remove miscellaneous storage items to provide proper clearances.

### E. Pool Equipment Room

1.   Replace damaged door frame and corroded door hardware including hinges, levers, and strike.

PROPRIETARY & CONFIDENTIAL E

# V.) GUEST ROOM AREAS

## A. Overall Area

1. Refinish all doors and frames. Paint frames per brand specified paint color.

## B. Elevators

1. Replace flooring.
2. Repair and refinish wall panels.
3. Replace existing ceiling with solid ceiling panels.
4. Replace lighting with recessed or integrated lighting in the ceiling panels.
5. Remove all posters.

## C. Elevator Lobbies

1. Replace all floor finishes.
2. Replace wall finish.
3. Provide the brand specified wall graphic across from elevator doors.
4. Repair and paint ceiling.
5. Replace window treatments.
6. Remove artwork.
7. Remove all furnishings and decor.

## D. Corridors

1. Replace all floor finishes.
2. Replace wall finish. Include new accent wall finish. Install full-height color-matched corner guards.
3. Repair and paint ceiling.
4. Replace ceiling tiles with 2ft x 2ft tegular edge acoustic ceiling tiles.
5. Replace ceiling-mounted light fixtures with recessed or decorative fixtures.
6. Replace all decorative wall mounted light fixtures.
7. Replace the window treatments.

## E. Stairwells

1. Replace stair and landing floor finishes. Provide the brand specified tile at 1st floor landings.
2. Replace wall base.
3. Replace wall finish.
4. Repair and paint ceilings.
5. Refinish all handrails.

## F. Vending

1. Soda/food machines are no longer required on guest floors because of the first floor market. Ice machines are required on every floor or every other floor preferably odd numbered floors. Re-purpose any abandoned space to storage with a lockable door.
2. Replace wall base.
3. Replace floor tile.
4. Replace wall finish.
5. Repair and paint ceiling.
6. Replace window treatments.

PROPRIETARY & CONFIDENTIAL E

## G. Guest Laundry

1. Replace tile flooring.
2. Conceal all exposed duct work.
3. Replace wall finish.
4. Repair and paint ceiling.
5. Replace ceiling-mounted light fixtures with recessed or decorative fixtures.
6. Replace clothes folding counter.
7. Repair or replace signage at entry door.

## H. Guest Rooms

1. Remove closet glass door.
2. Provide wing wall between the entry vestibule and sleeping area to accommodate the Smart Shelf and casegoods.
3. Modify the closet area to provide a Refreshment Zone. Provide built-in counter and shelving along with a new coffee maker, refrigerator, and microwave.
4. Replace wall base.
5. Replace all floor finishes. Provide carpet tile in the sleeping room and engineered wood plank flooring or tile at the entry vestibule. If tile is provided use the same tile in the vestibule and bathroom.
6. Replace all wall finishes and provide accent at window wall and entry vestibule wall.
7. Repair and paint ceiling.
8. Replace damaged entry door seals.
9. Replace all lighting. Provide new entry vestibule lights, nightstand lights, desk lights, and pendant lights.
10. Provide a Smart Shelf in the entry vestibule.
11. Replace all casegoods. Provide new headboards, nightstands, functional rack (wardrobe, luggage bench, televisions column, desk, and drawers), and rolling accent tables.
12. Replace all soft seating. Provide a chaise in king rooms, an adaptive chair in double queens (ottomans are optional), sleeper sofas (where provided), mobile tables (optional), and ergonomic chairs at all desks.
13. Replace bed skirts with new box spring wraps.
14. Replace all bedsets with new bedsets sourced from IHG contracted vendors.
15. Replace all window treatments. Provide laminate window frame element with roller shear and blackouts in fitted track system.
16. Replace full length mirror in the entry area.
17. Replace artwork.
18. Provide a safe in the wardrobe unit.
19. Replace television with a minimum 40in flat panel television on the new television column. Mounts must tilt and pivot.
20. Provide wall mounted thermostats. Replace any existing PTACs that cannot communicate with a wall mounted thermostat.

## I. Guest Suites

1. Replace all finishes furnishings fixtures and equipment as listed in the Guest Room section of this PIP.
2. Replace the existing kitchenette in the two room suites. Provide a built-in counter and overhead cabinets along with a new coffee maker, refrigerator and microwave. If sinks are to remain, they must be undermount with lever style hardware Provide base cabinetry to conceal plumbing.
3. Replace the existing kitchenette with a Refreshment Zone in the studio suites. Provide a built-in counter and shelving along with a new coffee maker, refrigerator and microwave. If sinks are to remain, they must be undermount with lever hardware. Provide base cabinetry to conceal plumbing.
4. Remove closet walls located in sleeping area. Full height wing wall to remain and match existing. Remove all closet components including glass door.
5. Replace missing or damaged door strikes to match door hardware.
6. Replace the artwork in the living area.
7. Replace the TV in the sleeping area with a minimum 40in TV. An additional minimum 40in TV will be required in the living area if the line of sight between any seating position on the sofa is greater than 16ft or if the line of sight is obstructed.
8. Provide a full height wing wall between the entry vestibule and sleeping area to accommodate the new Refreshment Zone counter and shelving.

## J. Guest Bathrooms

1. Replace wall base.
2. Replace all flooring.
3. Replace all wall finishes.
4. Repair and paint ceiling.
5. Replace ceiling mounted light fixture.
6. Replace all vanities sinks and faucets. Provide a millwork base with a white quartz stone top under-mount sink and faucets with lever style hardware.
7. Replace all vanity lighting with a back-lit mirror.
8. Replace facial tissue holder with a recessed or decorative holder.
9. Replace all wall-mounted hair dryers with new hair dryers in bags.
10. Replace toilet tissue holders: two, or one with shelf storage for second roll required.
11. Replace existing towel shelf and bar.
12. Replace existing tub surrounds with a new decorative tub surround system.
13. Replace GFCI outlet with a GFCI outlet with a guide light.

## K. Housekeeping Storage

1. Replace window treatments.

PROPRIETARY & CONFIDENTIAL E

# VI. LIFE SAFETY & ACCESSIBILITY

## A. Life Safety

Some Life Safety deficiencies were noted during the PIP inspection. Other deficiencies may exist as only a limited property evaluation was conducted in conjunction with this PIP. Full compliance with IHG's Global Brand Safety Standards in addition to local, state and national codes is the sole responsibility of the owner. An evaluation by a licensed engineer or architect is strongly recommended

**Public Areas:**

1. Meeting Room: Replace exit signs with illuminated exit signage.

**Heart of House Areas:**

1. Overall Area: Provide carbon monoxide detection in Heart of House areas containing fuel burning appliances and in each guestroom adjacent to a fuel-burning equipment room or its vent path and in each corridor or common area adjacent to a fuel-burning equipment room.

## B. ADA (Americans With Disabilities Act)

**US Hotels:**

All areas of the hotel are required to be in compliance with Local, State and Federal disability regulations, including the ADA. Owner is solely responsible for ensuring that the hotel complies with all applicable accessibility standards including the ADA. The ADA requirements and design standards can be found at www.ada.gov, or you can contact (800) 514-0301 with questions concerning ADA requirements. Consult your architect about changes to the ADA Accessibility Guidelines which went into effect on March 15th, 2012. *IHG requires that each hotel submit a complete ADA certificate to ensure that the hotel conforms to and complies with the design standards and requirements of the ADA, the ADA Architectural Guidelines (""ADAAG""), and all other related or similar state and local laws, regulations and other requirements governing public accommodations for persons with disabilities in effect.*

The commissioning of an ADA/accessibility Property Report by a professional specializing in ADA and accessibility compliance is strongly recommended to ensure full compliance with all accessibility laws.

*Question? Visit the U.S. Dept. of Justice web site: http://www.usdoj.gov/crt/ada or call: (800) 514-0301*

All ADA/accessibility deficiencies must be corrected in conjunction with the other requirements outlined in this PIP for each area of the hotel and be completed by the PIP due dates.

# ACKNOWLEDGEMENT PAGE

## Proposed License Renewal of the
## Holiday Inn Express and Suites - Albuquerque Airport
## Albuquerque,New Mexico

### Location # 10006 - Project # 42928
### December 05, 2018

I understand that the above captioned Property Improvement Plan ("PIP") does not obligate Holiday Hospitality Franchising, LLC ("HHFL" also referred to as "IHG" ) in any way to approve my franchise application or issue a license agreement and that HHFL expressly reserves the right to deny such application or deny offering a franchise. I further acknowledge that this report is a summary of the work that will be required, and that all work must be completed in conformity with all applicable Holiday Inn Express Brand Standards. I understand that if the franchise application is approved and a license agreement is executed, as a licensee I will be responsible for compliance with all local, state and federal laws, regulations and codes. The work outlined in this PIP does not address all requirements that may be mandated by local, state or federal codes, laws or regulations. As a licensee, I should check and ensure that all work on the property pursuant to this PIP or in connection with any other alteration or improvements complies with the applicable local, state and federal laws, regulations and codes.

I further acknowledge and agree that the due dates in this PIP and the dates specified in the license agreement, if any, have been mutually agreed upon, and I understand that all work must be satisfactorily completed by each due date. All requests for waivers or variances of or from the Standards or the requirements of the PIP must be submitted in writing to HHFL and must be approved in writing by HHFL, and requests for extensions to any due date must be requested in writing from HHFL in advance of the due date and must be approved in writing by HHFL. I understand and agree that as acondition to approving a due date extension, HHFL may require that the PIP be modified to include upgrading or renovation of additional areas or items (in addition to any charges that might be due). I have indicated my agreement to this PIP, including, without limitation, the terms set forth on this page by affixing my signature in the space below.

I further understand that if a license agreement is executed, the hotel must be operated in conformity with Holiday Inn Express Brand Standards, and that it will continue to be subject to quality evaluations and guest feedback measurements. The hotel will be required to maintain acceptable ratings or scores in product quality, services and guest expectations as measured by HHFL through the Guest Love metric or otherwise and must maintain an acceptable quality evaluation. Failure to do so may be grounds for default under the license agreement.

**The findings in this report are no longer effective six months after the date of this report unless a license agreement is executed within that time, unless extended in writing by HHFL.**

**ACCEPTED BY:**

_Tushar Patel_ (signature)                                             2 | 18 | 19

**Signature**                                                          **Date**

Tushar Patel

**Print Name**

110 Sunport, LLC

**Entity**

Holiday Inn Express

**Hotel Name**

ATTACHMENT "C"



**InterContinental Hotels Group**

## ACCESSIBILITY CERTIFICATION

Holidex Code: A̶BQY 1

Location #: 10006

Hotel Name (as it appears in the IHG Website): Holiday Inn Express

Hotel Address: 1921 Yale Blvd. SE, Albuq., NM 87106

Licensee: 110 Sunport LLC

This certification is intended to comply with the accessibility standards and/or the Travelers with Disabilities Section of the relevant brand standards as well as the InterContinental Hotels Group Design & Construction standards, all of which require compliance with Title III of the Americans with Disabilities Act (ADA), including the 1991 and/or 2010 ADA Standards for Accessible Design (ADA Standards), and all other applicable accessibility requirements.  These standards require as follows:

a.  For newly constructed hotels: (1) a pre-construction certification of the final plans for the building and building site submitted prior to the commencement of construction by an architect with professional experience applying the requirements of the ADA and the ADA Standards; and (2) a post-construction certification submitted after an inspection of as-built conditions signed by Licensee.

b.  For renovations required for relicensing, conversions, brand changes or changes of ownership: a post-renovation certification submitted after an inspection of as-built conditions signed by Licensee.

c.  For voluntary renovations: a post-renovation certification submitted after an inspection of as-built conditions signed by Licensee.

Please select the option for which this Certification is submitted:

☐  **Newly Constructed Hotel**  (Must submit Certification Options A & B below)

☒  **Renovation Required for Relicensing, Conversion, Brand Change or Change of Ownership** (Must submit Certification Option B below)

☐  **Voluntary Renovation**  (Must submit Certification Option B below)

## CERTIFICATION

Please select the Option(s) for which Licensee is submitting this Certification.

### ☐ Option A:  Newly Constructed Hotel - Pre-Construction Certification

The undersigned certifies that (1) he/she is an architect with professional experience applying the requirements of the ADA and the ADA Standards; and (2) the final plans for construction of this building and building site are in compliance with Title III of the ADA and any other applicable accessibility laws, ordinances or requirements, to the best of his/her knowledge, information, and belief.

Name of Architect: _____

Name of Firm: _____

Signature: _____

Title: _____      Date: _____

### ☐ Option B:  Licensee Post-Construction or Post-Renovation Certification

The undersigned Licensee, to the best of his/her knowledge, information, and belief, certifies that this building and building site have been built, renovated or altered in compliance with Title III of the ADA and any other applicable accessibility laws, ordinances or requirements, including, but not limited to, any accessibility laws or requirements regarding the following:

- The appropriate number and distribution of accessible guest rooms
- Features in accessible guest rooms
- Parking and exterior accessible routes
- Public entrances and interior accessible routes
- Service counters
- Public and common restrooms
- Meeting rooms
- Food and beverage establishments
- Swimming pools, spas, and fitness centers

Name of Licensee Principal Correspondent:  Tushar Patel

Signature:  *Tushar Patel*

Date:  2 | 18 | 19

*By receiving or accepting this Certification, IHG is not confirming that Licensee and/or Licensee's property are in compliance with all applicable federal, state, and local accessibility requirements. Per the relevant license agreement, Licensee is solely responsible for compliance with all applicable accessibility requirements, including the ADA and the 1991 and/or 2010 ADA Standards for Accessible Design.*

## GUARANTY

As an inducement to Holiday Hospitality Franchising, LLC ("Licensor") to execute the License dated _March 8, 2019_ between Licensor and 110 Sunport, L.L.C., ("Licensee"), for the Holiday Inn Express® & Suites branded hotel located at 1921 Yale Boulevard SE, Albuquerque, NM 87106, ("License"), the undersigned (sometimes referred to as the "guarantor(s)"), jointly and severally, hereby unconditionally warrant to Licensor and its successors and assigns that all of Licensee's representations in the License and the application submitted by Licensee to obtain the License are true, and guarantee that all of Licensee's obligations under the above License, including any amendments thereto whenever made (all hereafter referred to collectively as the "License"), will be punctually paid and performed.

Upon default by the Licensee and notice from Licensor, the undersigned will immediately make each payment and perform each obligation required of Licensee under the License. Without affecting the obligations of the undersigned under this Guaranty, Licensor may without notice to the undersigned extend, modify or release any indebtedness or obligation of Licensee or any of the guarantor(s), or settle, adjust or compromise any claims against Licensee or any of the guarantor(s). The undersigned waive notice of amendment of the License and notice of demand for payment or performance by Licensee.

Upon the death of an individual guarantor, the estate of such guarantor will be bound by this Guaranty but only for defaults and obligations hereunder existing at the time of death, and the obligations of the other guarantors will continue in full force and effect.

The Guaranty constitutes a guaranty of payment and performance and not of collection, and each of the guarantors specifically waives any obligation of Licensor to proceed against Licensee or any money or property held by Licensee or by any other person or entity as collateral security, by way of set off or otherwise. The undersigned further agree that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment of any of the guaranteed obligations is rescinded or must otherwise be restored or returned by Licensor upon the insolvency, bankruptcy or reorganization of Licensee or any of the undersigned, all as though such payment had not been made.

This Guaranty shall become valid as of the Term Commencement Date of the License which is _March 8, 2019_. It shall be deemed made and entered into in the State of Georgia, and the undersigned agree that this Guaranty and the obligations provided for hereunder shall be governed and construed in all respects by the internal laws and decisions (except any conflicts of law provisions) of the State of Georgia, including all matters of construction, validity, enforceability and performance.

To the extent permitted by law, the undersigned (i) consent and submit, at Licensor's election and without limiting Licensor's rights to commence an action in any other jurisdiction, to the personal jurisdiction and venue of any courts (federal, superior, or state) situated in the County of DeKalb, State of Georgia; (ii) waive any claim, defense or objection in any such proceeding based on lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis; and (iii) expressly waive personal service of process and consent to service by certified mail, postage prepaid, directed to the last known address of the undersigned, which service shall be deemed completed within ten (10) days after the date of mailing thereof.

The undersigned agree to pay Licensor all expenses, including reasonable attorneys' fees and court costs, incurred by Licensor, its parents, subsidiaries, affiliates, and their successors and assigns, to remedy any defaults of or enforce any rights under this Guaranty or the License, effect termination of this Guaranty or the License, or collect any amounts due under this Guaranty or the License.

LA 2018

**IN WITNESS WHEREOF**, each of the undersigned has signed this Guaranty under Seal, as of this _____ date of _____ 201__.

Guarantors:                                          Witnesses:

Tushar Patel, legal signature
1809 Archuleta Drive, N.E.
Albuquerque, NM 87112
SSN: 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

witness signature

Sangita Patel, legal signature
1809 Archuleta Drive, N.E.
Albuquerque, NM 87112
SSN: 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

witness signature

Tajdin Gillani, legal signature
13412 Executive Hill Way, SE
Albuquerque, NM 87123
SSN: _____

witness signature

Spouse of Tajdin Gillani, legal signature
Print name: _____
Address: _____

_____
SSN: _____

witness signature

Jayesh Patel, legal signature
13908 Spirit Trail
Albuquerque, NM 87112
SSN: 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

witness signature

Nanda Patel, legal signature
13908 Spirit Trail
Albuquerque, NM 87112
SSN: 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

witness signature

33                                                                    LA 2018

**IN WITNESS WHEREOF**, each of the undersigned has signed this Guaranty under Seal, as of this _____ date of _____ 201\_\_.

Guarantors:                                                    Witnesses:

_____                _____
Tushar Patel, legal signature                          witness signature
1809 Archuleta Drive, N.E.
Albuquerque, NM 87112
SSN: 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

_____                _____
Sangita Patel, legal signature                         witness signature
1809 Archuleta Drive, N.E.
Albuquerque, NM 87112
SSN: 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

_____                _____
Tajdin Gillani, legal signature                        witness signature
~~13412 Executive Hill Way, SE.~~  9500 MODESTO AVP
Albuquerque, NM ~~87123~~  87122
SSN: 264 83 4110

_____                _____
RASHIDA Gillani
Spouse of Tajdin Gillani, legal signature              witness signature
Print name: RASHIDA Gillani
Address: 9500 MODESTO AV
ALBUQUERQUE NM 87122
SSN: 264  83 - 4571

_____                _____
Jayesh Patel, legal signature                          witness signature
13908 Spirit Trail
Albuquerque, NM 87112
SSN: 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

_____                _____
Nanda Patel, legal signature                           witness signature
13908 Spirit Trail
Albuquerque, NM 87112
SSN: 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